Keller v. City of Wilmington

DONALD JOSEPH KELLER, Employee, Appellee v. CITY OF WILMINGTON POLICE DEPARTMENT, Employer; TRAVELERS INSURANCE COMPANY, Carrier, Appellants

No. 8210IC1323

(Filed 20 December 1983)

1. **Master and Servant § 68— workers' compensation—occupational disease defined**

    In order for a disease which is not specifically enumerated in G.S. 97-53 to be compensable as an occupational disease, the disease must be characteristic of a profession, peculiar to the occupation, and not an ordinary disease of life to which the general public is equally exposed, and there must be proof of causation between the injury and the employment. G.S. 97-53(13).

2. **Master and Servant § 68— workers' compensation—phlebitis not occupational disease**

    A patrol officer's phlebitis and resulting complications did not constitute an occupational disease where the evidence showed that phlebitis is not peculiar to the occupation of patrol officer but is peculiar to all occupations which require a great deal of sitting.

APPEAL by defendants from Opinion and Award of the North Carolina Industrial Commission entered 14 October 1982. Heard in the Court of Appeals 15 November 1983.

*Hewlett & Collins by John C. Collins for plaintiff appellee.*

*Crossley & Johnson by Robert W. Johnson for defendant appellants.*

BRASWELL, Judge.

During the course of his employment as a patrol officer for the City of Wilmington, the plaintiff developed phlebitis and, subsequently, pulmonary embolus. The plaintiff sought Workers' Compensation benefits which were originally denied by a deputy commissioner. Upon his appeal to the Full Industrial Commission, the plaintiff was awarded Workers' Compensation benefits on the grounds that the phlebitis and the resulting complications were occupational diseases. The defendants, contending that this award is error, have appealed.

The plaintiff first worked for the defendant-employer as a patrol officer in August of 1967 until he resigned in 1972. In August of 1977, he returned to work with the defendant-employer

as a patrol and training officer. This work was comprised of ten-hour shifts with 80% to 85% of his time spent driving and riding in a patrol car.

On 2 November 1980, as the plaintiff jumped into his patrol car in response to a call, he experienced pain in his right leg. Thereafter, he began visiting a physician who diagnosed his illness as superficial phlebitis. In January of 1981, he developed deep vein phlebitis and was hospitalized in March of 1981 for pulmonary embolus.

In the hearing before the deputy commissioner, two medical experts testified. The defendants rely upon the testimony of Dr. Robert Rosati who was of the opinion that "this occupation does not unduly expose him [the plaintiff] to the risk of thrombophlebitis compared to the average individual," that this disease is an ordinary disease of life to which the general public would be equally exposed, and that phlebitis is not characteristic or peculiar to the plaintiff's employment. The plaintiff, on the other hand, called his treating physician, Dr. Durwood Almkuist, III, as a witness who testified that the plaintiff's occupation which required him to sit 80% to 85% of the time not only caused the plaintiff's phlebitis but also exposed him to a greater risk of contracting that disease than the public in general. Using Dr. Almkuist's testimony, the Full Commission reversed the deputy commissioner's Opinion and Award and allowed the plaintiff to recover workers' compensation benefits.

The scope of our review in a workers' compensation proceeding is whether the Commission's findings are supported by any competent evidence and whether its subsequent legal conclusions are justified by those findings. *Buck v. Proctor & Gamble Co.*, 52 N.C. App. 88, 278 S.E. 2d 268 (1981). The Commission's findings of fact are conclusive on appeal when supported by competent evidence, but the Commission's legal conclusions are subject to our review. *See* G.S. 97-86; *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 266 S.E. 2d 760 (1980).

The plaintiff claims that he is entitled to workers' compensation benefits because he has contracted an occupational disease. Since phlebitis is not one of the diseases enumerated in G.S. 97-53, the plaintiff can only recover if phlebitis meets the re-

quirements under the general definition found in G.S. 97-53(13). This provision states that an occupational disease is:

> Any disease, other than hearing loss covered in another sub-division of this section, which is proven to be due to causes and conditions which are *characteristic of* and *peculiar to* a *particular trade, occupation* or *employment*, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment. (Emphasis added.)

[1] Any case involving an interpretation of G.S. 97-53(13) necessarily involves a look at *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979), the North Carolina case containing the most comprehensive analysis of this section. In *Booker*, former Chief Justice Sharp outlines the four requirements present in G.S. 97-53(13). First of all, the disease must be "characteristic" of a profession. "A disease is 'characteristic' of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question." *Id.* at 472, 256 S.E. 2d at 198. Secondly, the disease must be "peculiar to" the occupation. In the present case, the plaintiff is a patrol officer so the disease must be shown to be peculiar to the occupation of patrolmen. *Quoting Glodenis v. American Brass Co.*, 118 Conn. 29, 40-41, 170 A. 146, 150 (1934), the *Booker* court states that "peculiar to the occupation" means that " 'the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations . . . and is in excess of that attending employment in general.' " *Id.* at 473, 256 S.E. 2d at 199. The third and fourth requirements respectively provide that the disease must not be an ordinary disease of life " 'to which the general public is *equally exposed* outside' " and that there must be a proof of causation between the injury and the employment. *Id.* at 475, 256 S.E. 2d at 200. G.S. 97-53(13).

In reviewing the Full Commission's Opinion and Award, we agree that there is competent evidence to support its findings of fact that phlebitis is characteristic of a patrol officer's profession. The plaintiff testified that the nature of his job required him to be seated 80% to 85% of the time during his ten-hour shift and other evidence was received that this amount of sitting was a cause of phlebitis. This evidence also supports the contention that there is a causal relationship between the disease and the employ-

ment. Dr. Almkuist further testified that in his opinion the plaintiff's job made him more susceptible to contracting phlebitis than the general public. Because these findings are supported by competent evidence even though there is also contrary evidence, they are conclusive and binding on this Court. Thus, the plaintiff's evidence has proved the first, third, and fourth elements as required in *Booker.*

[2] However, the Commission's finding of fact that the disease is "peculiar to" the plaintiff's employment, the second *Booker* requirement, is not supported by competent evidence. In fact all the evidence given, even by the plaintiff's treating physician, indicates that phlebitis is not peculiar to the occupation of patrol officer, but rather is peculiar to all occupations which require a great deal of sitting whether the profession be that of a secretary, judge, or airplane pilot. For instance, when Dr. Almkuist was asked for his opinion explaining the reason for the plaintiff's illness, the following exchange occurred:

    A. [Dr. Almkuist] I think sitting for long periods of time is a definite cause that would lead to phlebitis and pulmonary embolus in some cases. It is not the only cause but I think it is definitely one of the possibly many causes that can lead to this.

    Q. [Plaintiff's counsel] In other words, it is your opinion that *an occupation* that requires you to spend 80 or 85 percent of the time either riding or driving an automobile, as in this particular case, is a very significant factor that he could have easily contracted phlebitis and further complications? (Emphasis added.)

    A. [Dr. Almkuist] Yes, sir.

As the record before this Court reveals, the plaintiff offered no evidence through Dr. Almkuist's testimony or otherwise that phlebitis is peculiar to the occupation of patrol officer. In *Booker, id.* at 473, 256 S.E. 2d at 199, the Supreme Court emphasized that the occupation itself must create a hazard for the contraction of this disease greater than that found in the general run of occupations or from employment in general. Obviously, there is a risk in the *general run of occupations* that there may be much sitting required. The plaintiff's physician never states that phlebitis is

peculiar to the occupation of patrol officer, but merely had a bearing on the development of this illness. The defendant's expert physician, Dr. Rosati, on the other hand, specifically asserts that in his opinion phlebitis does not have "any characteristics . . . peculiar to that occupation [patrol officer] which might cause the condition." Therefore, we hold the Commission's legal conclusion that the plaintiff's "phlebitis and pulmonary embolus were due to causes and conditions characteristic of and peculiar to his employment as a police officer" is based on a finding of fact not supported by competent evidence. Because G.S. 97-53(13) requires that the disease be peculiar to the occupation in question, the Commission's opinion and award must be reversed.

Reversed.

Judges ARNOLD and HILL concur.