Defendant appeals an award per N.C. Gen. Stat. § 97-31(24) for organ damage based on a claim for occupational disease.
Under N.C. Gen. Stat. § 97-53(13), an occupational disease must be proven to be due to causes and conditions which are characteristic of and peculiar to the employment. "A disease is `characteristic' of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question". Booker v. Duke Medical Center, 297 N.C. 458,472, 256 S.E.2d 189 (1979). The "peculiar to" requirement means that the occupation must create a hazard for the contraction of this disease greater than that found in the general run of occupations and in excess of that attending employment in general.Keller v. City of Wilmington Police Dept., 65 N.C. App. 675,309 S.E.2d 543 (1983); Booker, at 473.
 To insure this causal relationship between conditions of the workplace and the claimant's incapacity to work . . ., it must be shown factually that claimant's "occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." Rutledge v. Tultex Corp., 308 N.C. at 102, 301 S.E.2d at 370.
 "Disability i.e., incapacity for work, see N.C.G.S. 97-2(9)} caused by and resulting from a disease is compensable when, and only when, the disease is an occupational disease, or is aggravated or accelerated by causes and conditions characteristic of and peculiar to claimant's employment." [Walston v. Burlington Mills, 304 N.C. 670, 285 S.E.2d 822, as amended, 305 N.C. 296, 297, 285 S.E.2d 822, 828 (1982)]. The sense of the statement is that for an incapacity for work to be compensable under the Act on the theory that conditions of the workplace aggravated a non-occupational disease, it must be shown that the aggravation itself was causally related to the incapacity for work for which compensation is sought. In other words, it must be shown factually that but for workplace aggravation of the non-occupational disease there would not have been the same incapacity for work for which compensation is sought. Stated another way, if the same incapacity for work for which compensation is sought would have resulted because of the non-occupational disease itself, unaggravated by workplace conditions, there can be no compensation under the Act, even if workplace conditions, from a medical standpoint, aggravate the disease.
Wilkins v. J.P. Stevens Co., 333 N.C. 449, 453-54,426 S.E.2d 675 (1993).
In this case the plaintiff has not shown that her job with defendant-employer placed her at an increased risk of contracting
costochondritis. Both doctors testified that the cause of this condition is not known. Furthermore, plaintiff has not shown that her condition was peculiar to her employment with defendant-employer. The malady most frequently occurs in people who do not engage in the physical activity plaintiff associated with the acute episodes in this case. Plaintiff's own physical build may have made her more susceptible or increased her risk of aggravating the symptoms of costochondritis. When the disease was most active, any activity with her arms — lifting tires, pushing a vacuum cleaner, or carrying a clipboard — caused painful symptoms. Plaintiff's testimony associating her work on the largest tires in late 1993 with her period of disability in 1994 is the strongest evidence that "but for workplace aggravation of the non-occupational disease, there would not have been the same incapacity for work", and she was in fact compensated for that period. But comparing the pattern and degree of workplace activity to the pattern and degree of discomfort and disability due to the disease portrays a questionable relationship, and make it clear that, the physical exertions of the "general run of occupations" would likewise temporarily aggravate her symptoms. See Depo. of Dr. Mitchell, p. 19.
Certainly, the evidence that the problem is chronic tends to verify plaintiff's doctor's advice to avoid work that requires more than occasional light lifting. Unfortunately, taking that advice will reduce her income. But the Courts have rejected the argument that "inability to perform a particular type of work due to . . . susceptibility to infirmity from that work constitutes a disability under the Workers' Compensation Act." Mills v. J.P.Stevens Co., 53 N.C. App. 341, 344, 280 S.E.2d 802, cert. denied,304 N.C. 196, 285 S.E.2d 100 (1981); Sebastian v. Mona WatkinsHair Styling, 40 N.C. App. 30, 251 S.E.2d 872, cert. denied,297 N.C. 301, 254 S.E.2d 921 (1979).
It may be necessary to point out that, as in most cases, a different result could be justified by isolating particular statements by doctors from the whole record. One doctor here, associating symptoms with lifting, states that it "caused" costochondritis, before going on to testify that the cause of the disease was unknown to medicine. But it is the Commission's duty to find the true facts in light of all the credible evidence.Anderson v. Northwestern Motor Co., 233 N.C. 372, 376-77,64 S.E.2d 265 (1951).
Upon review of all of the competent evidence of record with reference to the errors assigned, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. On the dates involved, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date the employer-employee relationship existed between the parties.
3. As of said date the defendant was a duly qualified self-insurer under the provisions of the North Carolina Workers' Compensation Act.
4. On said date the plaintiff was earning an average weekly wage sufficient to generate the maximum compensation rate.
5. That the issues to be determined in this case are:
 a. Did the plaintiff develop an occupational disease during the course and scope of her employment with the defendant; and,
 b. If so, to what compensation, if any, is the plaintiff entitled under the Act.
6. The plaintiff began medical care and treatment for her complaints, the subject matter of this hearing, in March 1988, but has lost no uncompensated time from her employment with the defendant.
* * * * * * * * * * *
ORDER
Subsequent to the hearing before the Deputy Commissioner on September 16, 1994, the defendant moved to enter the defense provided under Section 97-24 of the Act which Motion is DENIED for the reason that the plaintiff was not medically advised that her disability was caused by conditions of her workplace more than two years prior to her request for hearing.
* * * * * * * * * * *
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following
* * * * * * * * * *
FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, September 16, 1994, the plaintiff was 35 years the of age with a birth date of July 14, 1959, stood five feet eight inches high and weighed approximately 149 pounds, had a twelfth grade education and was working on a two-year business degree in computer science, was married, had an eighteen year old daughter, was of slender build and was still employed by the defendant.
2. Plaintiff began working for the defendant August 11, 1986. She was working as a TUO operator, inspecting tires and stacking them on pallets, when she first felt symptoms of pain in her chest. The TUO operator job required lifting 30-38 pound tires onto stacks up to approximately her height. Prior to becoming a TUO operator, plaintiff was a "loader", lifting a greater number of tires than in the TUO operator position. Following the onset of symptoms, she was put on the lighter duty of sweeping for about six months, and then back on the regular duty job of "inspecting on a hook line", requiring reaching to turn the tires to examine them. She later successfully bid for a tire builder job, which required handling tires weighing 15-30 pounds, and continued in that position from "some time during 1989" through the date of the hearing before the Deputy Commissioner.
3. In all these positions, plaintiff suffered chest pains. The worst pains were during her first year as a tire builder, but the pains and swelling began to decrease as time went on. During her period as a tire builder, the problem would come and go. The discomfort never completely went away, but did not cause her to lose time from work. She testified that, "you just program it out" and "just go on and do what you've got to do".
4. Following the onset of chest pain in March of 1988, plaintiff sought treatment with Dr. A. R. Burba. Dr. Burba diagnosed plaintiff's problem as "a classic case of costochondritis or Tietze's syndrome". Costochondritis is a condition causing inflammation of the ribs where the bone and cartilage join. Dr. Burba succeeded in relieving plaintiff's symptoms with local injections of celestone and xylocaine and advised plaintiff to avoid heavy lifting when the condition flared. He noted plaintiff's "thin stature, decreased muscle mass and long slender arms", and recommended strengthening exercises to relieve irritation of the costosternal junction during lifting. When Dr. Burba last saw her July 12, 1988, plaintiff declined further medication, physical therapy, and counseling to deal with "functional overlay" that he recommended.
5. Plaintiff did not seek medical treatment again until September of 1993, when she was experiencing swelling of the knot on her chest. In October, 1993, plaintiff began having pain and swelling while working with the largest tires and told her supervisor. However, she continued to work and did not see a doctor until December. On December 29, 1993, her supervisor prepared a "pass to the hospital" stating that she had complained of chest pains since onset three months before while working with a heavy tire, and had been working with light-weight tires for the previous two months. Plaintiff was medically placed on light duty from January of 1994 until May 26, 1994. While on light duty, her chest was so sensitive that it was irritated at times by carrying a clipboard. Thereafter, she missed work through August 31, but was compensated through a salary continuation plan from May 26 to July 31, 1994 and received disability benefits on July 21 through August 31, 1994. Thereafter, she resumed her regular position as a tire builder.
6. Plaintiff began seeing Dr. John S. Mitchell, a family doctor, in January of 1994. He diagnosed costochondritis. Dr. Mitchell noted plaintiff's thin chest wall and arms. He opined that plaintiff was aggravating her costochondritis by lifting at work because of her body build, but that the cause of costochondritis was not known. He noted that the disease goes in cycles independent of aggravating conditions and can reoccur with very little activity. It can be aggravated with just the use of the arms. He opined that costochondritis is not a condition peculiar to the work plaintiff was doing, but was a fairly common condition.
7. In April of 1994, Dr. Mitchell referred plaintiff to Dr. Whitmer, an orthopaedist. Dr. Whitmer diagnosed plaintiff with chronic costochondritis, a condition that is seen most often with normal aging, that occurs more in women, that may be a complication of pregnancy, and that is less commonly associated with overuse. Few sufferers do heavy or repetitive jobs, and any activity with the arms can cause pain in sufferers. He believed plaintiff's symptoms were made worse by work based on plaintiff's history. He characterized plaintiff as a very thin woman with a barrel-shaped chest, which increased her susceptibility to aggravating costochondritis with lifting more than a person with a normal build. Dr. Whitmer would not say to a reasonable degree of medical certainty that costochondritis was peculiar to plaintiff's occupation due to the fact that doctors do not know what causes it. Plaintiff related to Dr. Whitmer various other activities which aggravated her condition, such as carrying bags of groceries, light household tasks, and carrying a clipboard at work. Dr. Whitmer advised plaintiff not to return to work involving lifting in excess of 10-20 pounds at a time. Dr. Whitmer sees 2 to 3 cases of costochondritis per month and had never seen a case of costochondritis that was reported to be so painful and disabling. He felt there was a degree of symptom magnification involved.
8. Plaintiff's costochondritis was cyclical in nature. She had episodes of the disease in 1988 and 1993, with less discomfort in between. In between these episodes, she sought no treatment, and she could lift tires in her regular job. However, in early 1994, she suffered pain from carrying a clipboard. The cause of costochondritis is not known. Plaintiff's claim was the first and only claim for costochondritis made to defendant-employer by an employee in over twenty years of operation. Plaintiff's body build made her more susceptible to aggravating symptoms of costochondritis.
9. Plaintiff did not suffer disability as a result of an occupational disease. Although plaintiff may have been more susceptible to aggravating her costochondritis because of her body build, plaintiff was not placed at an increased risk of developing or aggravating costochondritis by virtue of her employment with defendant as compared to the general public not so employed. The conditions of her employment with the defendant were not a significant causal factor in the development of her costochondritis. Plaintiff did not suffer disability as a result of an occupational disease.
* * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff has not suffered an occupational disease arising out of and in the course of the employment with the defendant-employer. N.C.G.S. § 97-53 (13); Keller v. Cityof Wilmington Police Dept., 65 N.C. App. 675, 309 S.E.2d 543
(1983); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
2. Plaintiff does not have a compensable permanent partial or temporary partial disability, because any inability to earn wages in her former employment with the defendant is the result of her personal sensitivity or susceptibility to infirmity, rather than an occupational disease. Hilliard v. Apex Cabinet Co.,54 N.C. App. 173, 282 S.E.2d 828 (1981); Sebastian v. Mona WatkinsHair Styling, 40 N.C. App. 30, 251 S.E.2d 872, cert. denied,297 N.C. 301, 254 S.E.2d 921 (1979); Mills v. J.P. Stevens Co.,53 N.C. App. 341, 280 S.E.2d 802, cert. denied, 304 N.C. 196,285 S.E.2d 100 (1981).
* * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for additional benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/ _____________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
JRW/jss/md