Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement dated November 8, 1996 as:
 STIPULATIONS
1. Employer-Defendant employed three or more employees at the time of the alleged accident; and all parties are subject to the jurisdiction of the North Carolina Industrial Commission.
2. An Employee-Employer relationship existed between plaintiff and employer-defendant on or about April 25, 1994, and plaintiff was a covered employee under the Workers' Compensation Act.
3. Liberty Mutual Insurance Company was the carrier on the risk on April 25, 1994.
4. A package of medical records, bills, and other exhibits identified or attached as Exhibit A are genuine and authentic and was submitted and stipulated into evidence by the parties with agreement that they would not require further identification or proof.
5. Plaintiff contends that the following issues are for hearing:
 a. Did plaintiff sustain a work-related illness and/or occupational disease on or about April 25, 1994?
 b. If so, to what medical, wage and disability benefits is plaintiff entitled?
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts, with minor modifications, the Findings of Fact of the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On or about April 25, 1994, plaintiff was employed with employer-defendant as a warehouseman. Plaintiff had been employed in this position since approximately June, 1992.
2. Plaintiff's job duties required him to cut pieces of steel and remove the slag after the cutting operation was performed. The cutting operation on the steel was performed by a machine. Plaintiff's job required him to lift the parts into the trays in order to clean the slag off of the steel. Plaintiff's job required him to remain on his feet for most of the day.
3. In April, 1994, plaintiff noticed swelling and aching in his leg. On April 22, 1994, plaintiff was examined by Dr. Stewart Kossover. Dr. Kossover diagnosed plaintiff with venous stasis ulcers on both the left and right. Plaintiff was subsequently referred to Dr. Todd Early.
4. Dr. Early first examined Plaintiff on April 25, 1994. He noted that plaintiff's past history was significant for deep venous thrombosis and pulmonary embolus in 1981. He also noted that plaintiff had previously developed a right ankle ulcer in 1986 which was treated conservatively. Dr. Early treated plaintiff by placing unna boots on both his left and right lower extremity. Plaintiff was written out of work until June 1, 1994.
5. Dr. Early treated plaintiff conservatively. By June 1, 1994, plaintiff's ulcers had healed. Dr. Early gave plaintiff a prescription for compression stockings and recommended that he return in three months.
6. Plaintiff returned to work for employer-defendant on or about June 12, 1994. He subsequently developed an ulcer on his right extremity. Plaintiff stopped working for employer-defendant on July 5, 1994. He has not returned to work since that time.
7. Plaintiff returned to Dr. Early on July 11, 1994. Dr. Early again recommended conservative treatment. Plaintiff's condition did not improve and Plaintiff was admitted to the hospital for surgery on July 26, 1994.
8. On August 1, 1994, Dr. Early performed a ligation and stripping of the greater and lesser saphenous vein in the right leg, along with a linton procedure and ligation of the perforator veins in plaintiff's right leg.
9. Following the surgery, Dr. Early recommended that plaintiff have limited standing and walking for a period of six months. By October 17, 1994, Dr. Early noted that plaintiff's wound had completely healed. A doppler venous evaluation on November 7, 1994, revealed that plaintiff had chronic deep vein thrombosis in his right lower extremity.
10. In January of 1995, Dr. Early was of the opinion that plaintiff had reached maximum medical improvement. He released plaintiff from his care, and recommended that he avoid jobs with prolonged standing, climbing or bending at the knee. Dr. Early advised plaintiff to continue to use his compression stockings. .
11. In his note of January 2, 1996, Dr. Early stated that plaintiff's venous stasis ulcers were not specifically related to any injury on the job. He noted that plaintiff had had these problems since 1979 and that the ulcers were a sequelae of this.
12. Plaintiff's past medical history was significant for three hospitalizations in 1981 for deep vein thrombosis and pulmonary embolus. He subsequently had a reoccurrence of an ulcer on his right leg in July of 1985. Following these hospitalizations, plaintiff did not wear compression stockings, or take anti-coagulant medication.
13. Since being released from Dr. Early's care, plaintiff has not looked for or applied for any employment. Plaintiff has not worked since July 4, 1994.
14. Plaintiff claims he has contracted a compensable occupational disease as a result of his employment with employer-defendant. Plaintiff's deep vein thrombosis was pre-existing. There is no recognizable link between the nature of plaintiff's job and an increased risk of contracting deep vein thrombosis. Plaintiff has therefore failed to prove that his deep vein thrombosis and resulting ulcers are characteristic of and peculiar to his occupation as a warehouseman. Dr. Early was of the opinion that plaintiff's ulcers were not related to any injury on the job and that his venous insufficiency was the cause of his ulcerations.
15. Plaintiff continued to receive his salary during the period of time that he was out of work between April, 1994, and June 12, 1994. Plaintiff also received his salary from July 5, 1994, through the middle of September, 1994. Thereafter, plaintiff received 60% of his salary through a short-term disability plan.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's condition of deep vein thrombosis and venous stasis ulcers is not an occupational disease under N.C. Gen. Stat. § 97-53(13).
2. Plaintiff has failed to show that his condition and the subsequent medical treatment were due to causes and conditions that were characteristic of and peculiar to his occupation as a warehouseman for employer-defendant. Keller v. City ofWilmington, 65 N.C. App. 675, 309 S.E.2d 543 (1983).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall pay its own costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________ RENÉE C. RIGGSBEE COMMISSIONER
DISSENTING:
S/ _______________ CHRISTOPHER SCOTT COMMISSIONER