***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and New Hanover Regional Medical Center from July 1979 to May 22, 1998 and between plaintiff and Manpower from March 10, 1999 to April 30, 1999.
3. New Hanover Regional Medical Center is self-insured with Allied Claims acting as its servicing agent. The carrier liable on the risk for Manpower is Managed Comp.
4. Plaintiff's average weekly wage is $414.32 with New Hanover Regional Medical Center and $240.00 with Manpower.
5. The parties submitted an indexed packet of medical records as Stipulated Exhibit #1.
6. The parties submitted an indexed packet of other records including Industrial Commission forms, discovery responses and the recorded statement of Sarah Stout as Stipulated Exhibit #2.
7. The parties submitted a Job Description from New Hanover Regional Medical Center as Stipulated Exhibit #3.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, plaintiff was a 52-year-old female who graduated from high school. Plaintiff became employed with defendant-employer, New Hanover Regional Medical Center, as a Unit Clerk in the Coronary Care Unit in 1979. Plaintiff's duties consisted, among other things, of ordering diets, handling and performing x-rays, running tests, handling paperwork, using computer equipment, typing and using a mouse, writing down information, answering the phone, signing documents, making appointments, using fax machines and reading heart monitors.
2. On May 22, 1998 plaintiff was terminated from New Hanover Regional Medical Center for absenteeism. Plaintiff was aware of the absentee policy and was given previous warnings as any other employee would have been given. Plaintiff has not worked for defendant-employer New Hanover Regional Medical Center since May 22, 1998.
3. On August 5 and August 18, 1998, plaintiff saw Dr. Snyder, at Wilmington Internal Medicine, complaining of gastric problems. There was no mention of any extremity complaints.
4. In March 1999, plaintiff returned to work through Manpower for Chloride Systems. Plaintiff worked a production type job manufacturing exit signs. Plaintiff inserted screws using an electric screwdriver and used pliers to crimp and twist wires.
5. On March 25, 1999, plaintiff was seen at Black River Health Services complaining of wrist and arm pain. Plaintiff was given work restrictions of no repetitive grasping with the right hand and was provided splints to restrict motion. Plaintiff was told that she might be unable to continue this particular job. Plaintiff then went to work through Manpower with Dell Labs. Plaintiff's position included doing overhead work loading and scanning boxes of cosmetics. Plaintiff last worked for Manpower at Dell Labs on April 30, 1999.
6. On May 18, 1999, plaintiff began treatment with Dr. Robert M. Moore, a board-certified orthopedic surgeon. Plaintiff complained of pain in her left arm, which had been present for the past couple weeks. She indicated the pain was mostly in her left shoulder with radiation into the left arm and wrist region with some left side and neck pain. Dr. Moore noted that plaintiff was previously treated for right carpal tunnel syndrome. Dr. Moore performed x-rays of plaintiff's neck and left shoulder and gave plaintiff a diagnosis of possible cervical degenerative disc disease with possible cervical radiculopothy and a second diagnosis of bursitis in the left shoulder. Plaintiff was prescribed Ibuprofen and advised to restrict her work activities from any repetitive or strenuous use of her left arm and any overhead activity involving her left arm for the next two weeks.
7. On June 1, 1999, plaintiff returned to Dr. Moore who recommended physical therapy. By June 29, 1999, plaintiff's neck and shoulder pain was greatly improved. Dr. Moore continued plaintiff under restrictions from repetitive activities.
8. On July 20, 1999, plaintiff requested to be released from her work restrictions, and Dr. Moore did so.
9. On August 2, 1999, plaintiff returned to Dr. Moore complaining of numbness and pain in her right hand. Dr. Moore recommended plaintiff undergo nerve conduction studies to evaluate the possibility of carpal tunnel syndrome. Dr. Moore did not assign any restrictions and recommended plaintiff continue to use the volar splint.
10. Nerve conduction studies were conducted on August 23, 1999, which were negative for carpal tunnel syndrome. The tests suggested the possibility of nerve compression of the neck area or polyneurpathy, a condition in which multiple nerves have abnormalities based on medical conditions rather than a physical nerve compression. Plaintiff returned to Dr. Moore on September 8, 1999 complaining of worsened right-sided symptoms. At that time, Dr. Moore referred plaintiff to Dr. Susan Torres, a neurologist.
11. Plaintiff presented to Dr. Torres on October 4, 1999, and on October 5, 1999 underwent a second nerve conduction study and EMG which revealed mild to moderate right-sided carpal tunnel syndrome. Dr. Torres recommended surgery and referred plaintiff back to Dr. Moore.
12. In October 1999, Dr. Moore recommended a right-sided carpal tunnel release if plaintiff's symptoms were sufficiently severe. However, plaintiff did not have the surgery.
13. Plaintiff returned to Dr. Moore in March 2000 and that was her last mention of carpal tunnel symptoms to him. On a May 2000 visit plaintiff did not mention carpal tunnel problems.
14. In his deposition testimony, Dr. Moore stated that, based on the nerve conduction studies of August 1999 and October 1999, he was of the opinion that plaintiff did not have carpal tunnel syndrome when the first one was done, but that she developed it in the interval between the two. Plaintiff did not work for either New Hanover Medical Center nor Manpower during the period from August to October 1999.
15. Dr. Moore was never presented with a causation question as to the cause of plaintiff's carpal tunnel syndrome and never testified as to the cause of plaintiff's development of carpal tunnel syndrome.
16. Dr. Torres stated that she did not know the cause of plaintiff's carpal tunnel syndrome. Dr. Torres was never asked at her deposition whether or not plaintiff's employment history placed plaintiff at increased risk to develop carpal tunnel syndrome.
17. Plaintiff has not proven by the greater weight of the medical evidence that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment with either defendant and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The condition at issue in this case is not an enumerated occupational disease under N.C. Gen. Stat. § 97-53. Accordingly, in order to qualify as a compensable occupational disease, it must be shown that the disease meets the standard set forth in N.C. Gen. Stat. §97-53(13). In order for a disease to constitute a compensable occupational disease under the statute, the condition must be due to causes and conditions characteristic of and peculiar to a particular trade or occupation or employment involved, but excluding all ordinary diseases of life to which the general public is equally exposed outside the employment. N.C. Gen. Stat. § 97-53(13); Booker v. MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. Plaintiff has not met her burden of showing that her occupation with either defendant caused or significantly contributed to the development of her carpal tunnel syndrome. Thus, plaintiff has failed to prove that she contracted a compensable occupational disease under the North Carolina Workers' Compensation Act during her employment with New Hanover Regional Medical Center or during her employment with Manpower. N.C. Gen. Stat. § 97-53(13); Keller v. City of Wilmington,65 N.C. App. 675, 309 S.E.2d 543 (1983); Booker, supra; Keel v. H V,Inc., 107 N.C. App. 536, 421 S.E.2d 362 (1992).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs; however, defendants shall each pay half of a $275.00 expert witness fee to Dr. Torres.
This the ___ day of February 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 s/____________ BUCK LATTIMORE CHAIRMAN
 s/______________ RENE C. RIGGSBEE COMMISSIONER