* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the parties at all relevant times.
3. Defendant is self-insured and Key Risk Management Services, Inc., is the third-party administrator.
4. Plaintiff's average weekly wage is $633.12, yielding a compensation rate of $422.10 per week.
5. The parties stipulated to 60 pages of medical records, including records from Occupational Health Services, Duke University Medical Center, Cape Fear Orthopedic Clinic, LaFayette Clinic, Physicians Total Rehabilitation, and Dr. James Lowe, Jr.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the Deputy Commissioner's hearing, plaintiff was a right-handed 40-year-old college graduate who was employed by defendant as the Assistant Director of Pretrial Services, a position she held since 1999. As Assistant Director of Pretrial Services, plaintiff prepares reports, supervises other employees, and enters data. Ninety-five percent of plaintiff's job is keyboarding or handwriting affidavits.
2. In December 2001, plaintiff began to notice tingling in her left hand, numbness and swelling. On February 8, 2002, defendant referred plaintiff to Occupational Health Services, for plaintiff's complaints of hand and wrist pain. Doctors at Occupational Health Services ordered a nerve conduction study and made a referral to a rheumatologist to evaluate plaintiff's persistent wrist pain. The nerve conduction studies were "normal," which showed no evidence of mononeuropathy in the arms and no evidence of radiculopathy. Plaintiff was not seen by a rheumatologist at that time. In May 2002, plaintiff sought treatment from Michelle Powell, D.O., at a clinic associated with Duke Hospital. Dr. Powell referred plaintiff to Dr. Louis Clark, orthopedist at Cape Fear Orthopaedic Clinic.
3. On July 16, 2002, Dr. Clark examined plaintiff for complaints related to pain in both hands, spasms in her hands, and twitching in her fingers. After examining plaintiff, Dr. Clark referred plaintiff to rheumatologist Dr. Maria Watson at LaFayette Clinic. Dr. Clark did not think that, from a hand surgical standpoint, he had anything to offer plaintiff.
4. On September 16, 2002, Dr. Watson examined plaintiff and determined that she did not have rheumatoid arthritis or inflammatory arthritis. Dr. Watson was unable to make a diagnosis or form an impression with regard to plaintiff's actual diagnosis. Dr. Watson re-examined plaintiff on December 9, 2002 and indicated that plaintiff did not have carpal tunnel syndrome based upon the EMG and nerve conductions that were already completed. Dr. Watson eventually concluded that plaintiff had tendinitis of her forearm, for which she recommended physical therapy and anti-inflammatory medications. Dr. Watson has never seen a job description, and she was not aware of any recognizable link between tendinitis and plaintiff's job. Dr. Watson also stated that tendinitis was not characteristic of and peculiar to the position which plaintiff held and that tendonitis is an ordinary disease of life. Plaintiff was not taken out of work by any doctor and did not miss work, other than for doctor's appointments, while she sought treatment for her hand pain.
5. On May 4, 2004, Dr. James E. Lowe, Jr. examined plaintiff. Dr. Lowe is a specialist in plastic and hand surgery and performs approximately 300 hand surgeries per year. Dr. Lowe found that plaintiff had clinical evidence of carpal tunnel syndrome, including a positive Tinel's sign and Phalen's sign in both upper extremities, some sensory loss, and evidence of deQuervain's disease in both wrists. Dr. Lowe ordered a nerve conduction study, which was performed and read by board certified neurologist Dr. Patel. The nerve conduction study showed polyneuropathy and confirmed Dr. Lowe's clinical diagnosis of carpal tunnel syndrome. On June 3, 2004, plaintiff presented to Dr. Lowe with continued weakness and numbness. Dr. Lowe continued plaintiff on Orudis, instructed her to wear splints at night, and to come back for a check-up in three weeks. Dr. Lowe noted on June 3, 2004 that plaintiff would eventually require surgery for her carpal tunnel syndrome. On July 26, 2004, Dr. Lowe last treated plaintiff for continued numbness in both hands at night, with only a slight relief from the Orudis. Plaintiff also had weakness of the abductor pollicis muscle in both hands. Dr. Lowe continued plaintiff on the medication and instructed her to return in six weeks. At that time, Dr. Lowe still recommended that plaintiff have carpal tunnel surgery on both hands.
6. Dr. Lowe testified to a reasonable degree of medical certainty and the Commission finds that plaintiff's repetitious work caused synovitis, which led her to develop bilateral carpal tunnel syndrome. Dr. Lowe further stated that tendinitis is the same as synovitis, which causes swelling of the flexor tendons, crowding the carpal tunnel and squeezing of the median nerve. Dr. Lowe stated that the most common cause of carpal tunnel syndrome is synovitis. Because Dr. Watson diagnosed plaintiff with tendonitis, Dr. Lowe felt his diagnosis of carpal tunnel syndrome was consistent with Dr. Watson's diagnosis of tendinitis. Dr. Lowe also testified that the general public at large who did not do repetitive keyboarding would not be at equal risk of contracting carpal tunnel as someone who did perform the repetitive activity.
7. The Full Commission finds that plaintiff contracted an occupational disease to both of her hands as a result of her job with defendant as Assistant Director of Pretrial Services. Plaintiff's condition is the result of a disease that is characteristic of and peculiar to her particular trade, occupation or employment. Plaintiff's disease is not an ordinary disease of life to which the public is equally exposed outside the employment.
8. Plaintiff continues working for defendant-employer and, to date, has no missed time as the result of the compensable occupational disease.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
1. Plaintiff bears the burden of proving each element of compensability in order to prove the existence of an occupational disease under N.C. Gen. Stat. § 97-53(13). This requires the plaintiff to show that (1) the disease must be characteristic of a trade or occupation; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation. Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101
(1981). A disease is "characteristic" of the profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question. Booker v. Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979). "Peculiar to the occupation" as used in subdivision (13) of N.C. Gen. Stat. § 97-53, means that the conditions of the employment must result in a hazard that distinguishes it in character from the general run of occupations and is in excess of that employment in general. Keller v. City of Wilmington Police Dept., 65 N.C. App. 675,309 S.E.2d 543 (1983).
2. In this case, plaintiff's employment with defendant-employer caused or significantly contributed to the development of carpal tunnel syndrome and plaintiff's job with defendant-employer placed her at an increased risk for developing this condition. Plaintiff's carpal tunnel syndrome was not an ordinary disease of life to which the general public is equally exposed and, therefore, plaintiff contracted a compensable occupational disease. N.C. Gen. Stat. § 97-53(13); Booker v. MedicalCenter, supra.
3. Plaintiff is entitled to all medical and other treatment that is reasonably intended to either effect a cure, give relief, or lessen the period of her disability that is related to her compensable occupational disease. N.C. Gen. Stat. §§ 97-2(19); 97-59.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay for all medical, rehabilitation, and other expenses incurred or to be incurred by plaintiff as a result of the compensable occupational disease for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief, or lessen plaintiff's period of disability.
2. Defendant shall pay the costs.
This 3rd day of August 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER