STEVIE JOHNSON, EMPLOYEE-PLAINTIFF v. CITY OF WINSTON-SALEM, EMPLOYER, SELF-INSURED, DEFENDANT

No. COA07-536

(Filed 5 February 2008)

**1. Workers' Compensation— carpel tunnel syndrome—compensable occupational disease—sufficiency of evidence**

The evidence in a workers' compensation case was sufficient to support the Industrial Commission's finding that plaintiff's carpal tunnel syndrome was a compensable occupational disease. Plaintiff worked as a recreational center custodian and used machines which vibrated and required gripping and twisting, and his treating physician testified that his job contributed significantly to the development of his carpal tunnel syndrome.

**2. Workers' Compensation— temporary disability—carpel tunnel syndrome—recreational center custodian**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff is temporarily disabled and entitled to compensation under N.C.G.S. § 97-29. Given plaintiff's limited education, limited work experience, and limited training, in addition to his poor health, his compensable injury causes him a greater degree of incapacity than the same injury would cause another person.

**3. Workers' Compensation— total disability—multiple medical conditions—benefits not apportioned**

The Industrial Commission correctly awarded plaintiff full compensation for his total disability, without apportioning plaintiff's benefits for non-work related medical conditions. There was competent evidence to support the Commission's finding that plaintiff was disabled as a result of his bilateral carpal tunnel syndrome, and insufficient evidence was presented from which the Commission could apportion the award.

**4. Workers' Compensation— maximum medical improvement—treatment discontinued—lost health insurance**

The Industrial Commission correctly determined that a workers' compensation plaintiff had not reached maximum medical improvement from his carpel tunnel syndrome. Plaintiff discontinued his treatment when his health insurance expired after he left work due to his medical conditions, hardly a voluntary decision, and the evidence indicates that he will resume treatment when he is financially able.

Judge ARROWOOD concurring in part and dissenting in part.

Appeal by Defendant from Opinion and Award entered 5 February 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 November 2007.

*Roderick T. McIver for Plaintiff.*

*Wilson & Coffey, LLP, by Kevin B. Cartledge and Jason L. Jelinek, for Defendant.*

STEPHENS, Judge.

Stevie Johnson ("Plaintiff"), a custodial maintenance worker for the City of Winston-Salem ("Defendant"), developed bilateral carpal tunnel syndrome, gout, and arthritis, and claimed disability benefits resulting therefrom. Defendant denied Plaintiff's claim by filing a Form 61 with the Industrial Commission.

In an Opinion and Award filed 17 May 2006, Deputy Commissioner Bradley W. Houser held that Plaintiff's employment caused or significantly contributed to the development of his bilateral carpal tunnel syndrome. He further determined that there was insufficient evidence to conclude that Plaintiff's employment caused or signifi-

**JOHNSON v. CITY OF WINSTON-SALEM**

[188 N.C. App. 383 (2008)]

cantly contributed to his development of gout or arthritis. Plaintiff was awarded temporary total disability benefits pursuant to N.C. Gen. Stat. § 97-29 and medical expenses related to his bilateral carpal tunnel syndrome. Both parties appealed to the Full Commission.

In an Opinion and Award filed 5 February 2007, a majority of the Full Commission affirmed Deputy Commissioner Houser's Opinion and Award with modifications, finding that Plaintiff was not at maximum medical improvement and ordering further medical treatment for Plaintiff.

From the Opinion and Award of the Full Commission, Defendant appeals.

## I. FACTS

Plaintiff, a 38-year-old high school graduate, worked for Defendant as a recreational center custodian for approximately 15 years. His duties included sweeping, mopping, dusting, polishing, washing windows, washing baseboards, disposing of trash, and removing gum from floors and bleachers. In performing these duties, Plaintiff was required to use a mechanized buffer on the floors and a machine to shampoo the carpet. Additionally, Plaintiff worked some overtime for Defendant on weekends, stripping and waxing gym floors in several recreational centers throughout Winston-Salem. His primary duty during his overtime work was to operate the stripping and buffing machinery, which necessitated the nearly constant gripping and twisting of his hands and wrists. Plaintiff performed all of these duties throughout his 15-year period of employment.

Prior to filing his workers' compensation claim, Plaintiff had been diagnosed with the following: gout, arthritis, hypercholesterolemia, congestive heart failure, underlying idiopathic cardiomyopathy, shortness of breath, chest pain, bilateral knee pain, obesity, atrial fibrillation, tingling and numbness in his hands, hypertension, diabetes, and degenerative joint disease in his knees.

Dr. Anthony DeFranzo, who treated Plaintiff for his carpal tunnel syndrome and was aware of Plaintiff's prior medical conditions, testified to the following: Plaintiff's gout and arthritis were aggravated by his employment but were not caused by his work activities; the combination of Plaintiff's gout, arthritis, and carpal tunnel syndrome resulted in a significant disability in both hands; Plaintiff's employment exposed him to an increased risk of developing

carpal tunnel syndrome as opposed to members of the general public not so exposed; and Plaintiff had not yet reached maximum medical improvement.

Dr. James T. Burnette, Ph.D., CPE, an ergonomist, reviewed Plaintiff's work activities and determined that they were repetitive in nature and exposed him to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed.

## II. DISCUSSION

Appellate review of an Opinion and Award of the Full Commission is limited to a determination of whether the Full Commission's findings of fact are supported by any competent evidence, and whether those findings support the Full Commission's legal conclusions. *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). The Full Commission's conclusions of law are reviewable *de novo. Whitfield v. Lab. Corp. of Am.*, 158 N.C. App. 341, 581 S.E.2d 778 (2003).

### A. Compensable Injury

[1] Defendant first contends that the evidence was insufficient to support the Full Commission's determination that Plaintiff's carpal tunnel syndrome is a compensable injury. Specifically, Defendant argues there was insufficient evidence for the Full Commission to find that Plaintiff's employment with Defendant increased his risk of contracting carpal tunnel syndrome. We disagree.

For an injury to be compensable under our Workers' Compensation Act, it must be either the result of an "accident arising out of and in the course of employment or an 'occupational disease.'" *Hansel v. Sherman Textiles*, 304 N.C. 44, 51, 283 S.E.2d 101, 105 (1981). Although certain "occupational diseases" are specifically listed as compensable conditions under N.C. Gen. Stat. § 97-53, carpal tunnel syndrome is not among them. Thus, this disorder is compensable only if (1) it is "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment[,]" and (2) it is not an "ordinary disease of life to which the general public is equally exposed outside of the employment." *Booker v. Duke Med. Ctr.*, 297 N.C. 458, 468, 256 S.E.2d 189, 196 (1979); N.C. Gen. Stat. § 97-53(13) (2005).

"A disease is 'characteristic' of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question." *Booker*, 297 N.C. at 472, 256 S.E.2d at 198. A disease is "peculiar to the occupation" when the conditions of the employment result in a hazard which distinguishes it in character from employment generally; the disease need not be one that originated exclusively from the employment. *Id.* at 473, 256 S.E.2d at 199. Furthermore, the statute does not preclude coverage for all ordinary diseases of life, but only for those " 'to which the general public is *equally exposed* outside of the employment.' " *Id.* at 475, 256 S.E.2d at 200 (quoting N.C. Gen. Stat. § 97-53(13)).

Here, Dr. DeFranzo testified that Plaintiff's job contributed significantly to the development of Plaintiff's carpal tunnel syndrome. He explained:

[F]rom what I understand, [Plaintiff] did multiple duties as a custodian using his hands to do various tasks all day, but he also used vibrating equipment like floor buffers and things. And when it comes to carpal tunnel syndrome, tools that vibrate are notorious for aggravating and causing carpal tunnel syndrome.

. . . .

[L]ess than one (1) percent—point six (.6) percent of the population develops carpal tunnel syndrome in the general population that do not do repetitive tasks at work. And there is about a six (6) percent incidence of carpal tunnel syndrome in job activities that require repetitive work. So there's about a ten (10) times increase . . . of carpal tunnel syndrome in patients that do lots of work with their hands.

Moreover, when directly asked whether Plaintiff's job duties would "increase his risk of [developing] carpal tunnel syndrome[,]" Dr. DeFranzo replied, "Yes. . . . [P]atients that do repetitive work [with their hands] have an increased incidence of carpal tunnel syndrome." This testimony is sufficient evidence to support the Full Commission's finding that "Plaintiff's employment with Defendant . . . exposed him to an increased risk of developing bilateral carpal tunnel syndrome as opposed to members of the general public not so exposed."

Defendant cites *Keller v. City of Wilmington Police Dep't*, 65 N.C. App. 675, 309 S.E.2d 543 (1983),[1] *disc. review allowed*, 310 N.C. 625, 315 S.E.2d 690 (1984),[2] for the proposition that Plaintiff must prove that carpal tunnel syndrome is "peculiar to janitors or custodians." However, in *Lumley v. Dancy Constr. Co.*, 79 N.C. App. 114, 339 S.E.2d 9 (1986), this Court disavowed the holding in *Keller*, stating: "It is well settled that this Court may not overrule nor modify decisions of the Supreme Court of North Carolina. Thus, any language in *Keller* which might be interpreted as defining the language 'peculiar to' differently than was set forth in *Booker* is ineffective and should have no precedential value." *Lumley*, 79 N.C. App. at 121-22, 339 S.E.2d at 14 (citation omitted).

Accordingly, based on Dr. DeFranzo's testimony and the test enunciated in *Booker*, we conclude the evidence was sufficient to support the Full Commission's finding that Plaintiff's carpal tunnel syndrome is a compensable occupational disease.

## B. Disability

**[2]** Defendant next contends that Plaintiff failed to establish disability within the meaning of the Act. We disagree.

An employee who suffers a compensable injury is disabled under the Act if the injury results in an "incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005). Consequently, determination of whether a worker is disabled focuses on the injured employee's diminished capacity to earn wages, rather than upon his physical impairment. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986). The employee has the burden of proving the existence and extent of his disability, *Hall v. Chevrolet Co.*, 263 N.C. 569, 139 S.E.2d 857 (1965), and he may meet this burden in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable

---

1. In *Keller*, this Court held that the Commission improperly awarded compensation to the plaintiff, a patrol officer, for phlebitis because that disease was "not peculiar to the occupation of patrol officer, but rather is peculiar to all occupations which require a great deal of sitting whether the profession be that of a secretary, judge, or airline pilot." 65 N.C. App. at 678, 309 S.E.2d at 545.

2. Although the North Carolina Supreme Court granted discretionary review, the case was never heard so no Supreme Court decision was rendered.

of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).

The Full Commission concluded that Plaintiff is temporarily totally disabled and thus entitled to an award for total disability under N.C. Gen. Stat. § 97-29, and that Plaintiff met his burden of proving disability under the first prong of *Russell*. While we agree with the Full Commission's ultimate conclusion that Plaintiff is totally disabled and entitled to temporary total disability benefits, we conclude that Plaintiff has met his burden of proving disability under the third prong of *Russell*.

In support of its conclusion that Plaintiff is entitled to an award for total disability, the Full Commission made the following pertinent findings of fact:

1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was thirty-eight years of age, having a date of birth of September 8, 1967, and was a high school graduate.

2. At the time of the filing of his claim, Plaintiff had worked for Defendant as a custodian at an assigned recreational center for approximately fifteen years. . . .

. . . .

5. . . . Dr. DeFranzo diagnosed Plaintiff as having bilateral carpal tunnel syndrome and excused Plaintiff from work beginning March 4, 2004. . . .

6. Prior to the filing of his claim in this matter, Plaintiff had been diagnosed with gout, arthritis, hypercholesterolemia, congestive heart failure, underlying idiopathic cardiomyopathy, obesity, atrial fibrillation, hypertension, diabetes, and degenerative joint disease of his knees. . . .

. . . .

9. For treatment of Plaintiff's bilateral carpal tunnel syndrome, Dr. DeFranzo recommended surgical release procedures. On June 12, 2004, Dr. DeFranzo performed a release on Plaintiff's left wrist. Dr. DeFranzo medically excused Plaintiff from all work pending an appointment with a rheumatologist and referred him to physical therapy. Dr. DeFranzo recommended performing the right release procedure after Plaintiff had sufficiently recovered from the left release procedure. As of the hearing date before the Deputy Commissioner, Plaintiff had not undergone this right wrist procedure.

10. Dr. DeFranzo continued to treat Plaintiff until September 2004, when he referred Plaintiff to a rheumatologist. As of the date of the hearing before the Deputy Commissioner, a rheumatologist had not treated Plaintiff. . . .

. . . .

16. Based upon the credible medical and vocational evidence of record, the Full Commission finds that as a result of his bilateral carpal tunnel syndrome, Plaintiff has been unable to earn any wages in any employment since March 4, 2004.

A thorough review of the record establishes that these findings of fact are supported by competent evidence and thus are binding on appeal. Defendant argues, however, that Plaintiff did not offer any evidence that it would be futile for him to search for a job. In support of this argument, Defendant relies on Dr. DeFranzo's testimony that

this kind of a person could have a security job, for instance, where they're just punching a time clock. And if they're, you know, not in a position where they have to combat an individual. If they're looking at monitor screens, you know, there are probably things he could do if his education would allow or if he can be reeducated to allow him to do other things.

In *Little v. Anson Cty. Schs. Food Serv.*, 295 N.C. 527, 246 S.E.2d 743 (1978), our Supreme Court determined that the Full Commission erred in denying the plaintiff benefits for total disability based on the testimony of a physician that "there are some gainful occupations that someone with [plaintiff's] degree of neurological problem could pursue[.]" *Id.* at 531, 246 S.E.2d at 745. The Court stated:

We first note that [the physician's] quoted statement is an oblique generality which sheds no light on plaintiff's capacity to earn

wages. Uncontradicted evidence establishes that she is over fifty years of age, somewhat obese, has an eighth grade education, and at the time of her accident had been working as a laborer earning less than $2.00 per hour. The relevant inquiry under G.S. 97-29 is not whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff herself has such capacity.

. . . .

[The physician's] testimony sheds no light on plaintiff's capacity to pursue gainful employment. Consequently his testimony affords no basis for the Commission to conclude plaintiff has not suffered total incapacity for work.

*Id.* at 531-32, 246 S.E.2d at 746.

As in *Little*, here the relevant inquiry is whether Plaintiff himself is capable of working and earning wages, not whether all or some persons with Plaintiff's degree of injury have such capacity. Dr. DeFranzo's quoted statement is a generality which sheds no light on Plaintiff's capacity to earn wages. Thus, this statement affords no basis to conclude that Plaintiff has not suffered total incapacity for work. In fact, Dr. DeFranzo never released Plaintiff to work. He testified that Plaintiff "was unable to perform any job that would involve significant repetitive activity or any type of heavy-duty lifting with his hands" and that if Plaintiff was no better than the last time Dr. DeFranzo had seen Plaintiff in September 2004,[3] he would suggest that Plaintiff seek vocational rehabilitation to be assigned a "permanent sedentary light-duty type of job . . . ."

Furthermore, the fact that Plaintiff can perform light-duty work does not in itself preclude the Full Commission from making an award for total disability if the evidence shows that, because of pre-existing limitations, Plaintiff is not qualified to perform the kind of light-duty jobs that might be available in the marketplace. *Peoples*, 316 N.C. 426, 342 S.E.2d 798.

[I]f other pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compen-

---

3. At the hearing, Plaintiff was unable to make a fist with his left hand and indicated that it is "swollen all the time now." Plaintiff also testified that he has no use of his right hand as he can't grip anything with it, and that "everything" has gotten worse.

sated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health.

*Little,* 295 N.C. at 532, 246 S.E.2d at 746.

Here, the uncontradicted evidence established that Plaintiff has only a high school education, had been working as a custodian for Defendant for almost his entire adult working life, and has a litany of medical problems including gout, arthritis, hypercholesterolemia, congestive heart failure, underlying idiopathic cardiomyopathy, obesity, atrial fibrillation, hypertension, diabetes, and degenerative joint disease of his knees. There was no evidence that Plaintiff was offered or received any kind of vocational rehabilitation services. Given Plaintiff's limited education, limited work experience, and limited training, in addition to his poor health, his compensable injury causes him a greater degree of incapacity than the same injury would cause some other person with superior education or work experience, or who is in better health. Thus, all the evidence tends to show that any current effort by Plaintiff to obtain sedentary light-duty employment, the only employment Dr. DeFranzo testified that Plaintiff is physically capable of performing, would have been futile.[4]

Accordingly, the Full Commission did not err in concluding that Plaintiff is temporarily totally disabled under N.C. Gen. Stat. § 97-29 and entitled to compensation therefor.

### C. Apportionment

[3] Next, Defendant contends the Full Commission erred in not apportioning Plaintiff's benefits because the evidence presented indicated that "only a small quantifiable percentage of Plaintiff's injuries were [sic] related to his employment."

Where a plaintiff is rendered totally unable to earn wages, partially as a result of a compensable injury and partially as a result of a non-work-related medical condition, the plaintiff is entitled to an award for total disability under N.C. Gen. Stat. § 97-29. *Counts v. Black & Decker Corp.,* 121 N.C. App. 387, 465 S.E.2d 343 (1996).

---

4. We note that, as of the date of the hearing, treatment recommended by Dr. DeFranzo for Plaintiff's carpal tunnel syndrome had not been completed, Plaintiff had not reached maximum medical improvement, and Dr. DeFranzo testified without contradiction that it would be necessary for Plaintiff to be further evaluated to determine the extent of permanent impairment to his hands after he reached maximum improvement.

However, a plaintiff's total disability benefits may be apportioned when sufficient evidence is presented to allow the Commission to ascertain the percentage of the plaintiff's disability that is caused by the occupational disease. *Weaver v. Swedish Imports Maint., Inc.*, 319 N.C. 243, 354 S.E.2d 477 (1987). Thus, apportionment is not proper where there is no evidence attributing a percentage of the plaintiff's total incapacity to earn wages to his compensable injury, *Errante v. Cumberland Cty. Solid Waste Mgmt.*, 106 N.C. App. 114, 415 S.E.2d 583 (1992), or where the evidence before the Commission renders an attempt at apportionment between work-related and non-work-related causes speculative. *Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 336 S.E.2d 47 (1985).

In *Errante*, the evidence established that the plaintiff's non-work-related anemia and diabetes caused part of the plaintiff's permanent and total disability, thus permitting the application of judicial apportionment. However, "no evidence was presented attributing any percentage of plaintiff's total incapacity [to earn wages] solely to his compensable injuries." *Errante*, 106 N.C. App. at 120, 415 S.E.2d at 586. Furthermore, a testifying physician stated that there was "no way anybody [could] honestly say" what percentage of the plaintiff's total disability was caused by his compensable injuries and what percentage was caused by his noncompensable medical problems. *Id.* at 120, 415 S.E.2d at 587. Accordingly, the Court ruled that the "plaintiff [was] entitled to full compensation for total and permanent disability." *Id.*

In *Counts*, 121 N.C. App. 387, 465 S.E.2d 343, the plaintiff injured her shoulders while working on an assembly line. A doctor assigned a 20 percent permanent partial disability rating to the use of both arms. The plaintiff also suffered from a non-job-related arthritic condition of her hands. This Court refused to apportion the plaintiff's award of total disability compensation as the permanent partial disability rating did not address what percentage of the plaintiff's total disability to earn wages was attributable to her compensable arm and shoulder injury and what percentage was attributable to her non-compensable osteoarthritic condition. "Thus, there was no evidence from which the Commission could apportion the award and [the] plaintiff [was] entitled to full compensation for her total and permanent disability." *Id.* at 391, 465 S.E.2d at 346.

Here, on direct examination, Dr. DeFranzo testified as follows:

A. . . . I thought that [Plaintiff] had about a five (5) percent permanent impairment in each hand from carpal tunnel syn-

drome . . . and that the gout and osteoarthritis was so severe in this patient that he may have actually had a fifty (50) percent disability in each hand; but five (5) percent of that impairment would be from carpal tunnel syndrome in each hand.

. . . .

Q. Doctor, is the Plaintiff's carpal tunnel syndrome debilitating to any extent?

A. The carpal tunnel syndrome itself has given him a five (5) percent disability in each hand, however, his arthritis and his gout have given him significant more disability. And in my opinion, I thought he had probably a fifty (50) percent disability in each hand. His joints are extremely stiff and they do not move, which limits his grip strength, and he has pain when he attempts to use his hands repetitively now. And all those factors together contribute to his disability.

. . . .

Q. Doctor, you—in your letter—assigned the patient a permanent partial disability rating of up to fifty (50) percent of his hands?

. . . .

Would it be necessary for you to give an accurate opinion of his partial and permanent disability—would it be necessary for you to see him again or would it be helpful?

A. Yes. When we do a disability rating, we actually measure the motion in each joint—each and every joint of the hand. . . .

On cross-examination, Dr. DeFranzo further testified as follows:

Q. Is there any way to say—to categorize the job or, you know, any sort of attributation of the job as contributing to his carpal tunnel "x" percent over the gout or over the arthritis that he has?

A. If it's osteoarthritis and gout—and the gout is reasonably well controlled, in my opinion is probably, you know, sixty (60) percent the job, since he did it for fifteen (15) years, and forty (40) percent the other factors. That would be probably my assessment; however, I think his disability purely from carpal tunnel syndrome is probably going to be five (5) percent in each hand from carpal tunnel syndrome. So the majority of his disability is

from the arthritis and the gout, and the stiffness in his hands and lack of motion, which are caused by the arthritis.

. . . .

Q. I know you gave a five (5) percent PPD rating for carpal tunnel, but there's another rating of fifty (50) percent. Do I understand it correctly that you're saying, "I'm giving him a fifty (50) percent as of February, but really to make this an accurate diagnosis, I'd like to see him again." . . .

A. Yes, it—I'm just saying that five (5) percent of his disability is from the carpal tunnel syndrome in each hand; however, his hands just don't work ninety-five (95) percent.

. . . .

He's got at best—I thought—at that time about a fifty (50) percent use of his hands, not from just the carpal tunnel syndrome, but from all the other contributing conditions. Now, a large part of that sixty (60) percent might be work-related if it's just wear-and-tear osteoarthritis.

Defendant argues that the above testimony shows that carpal tunnel syndrome accounts for only five percent of Plaintiff's disability. We disagree. To the contrary, it appears that the five percent "disability" to which Dr. DeFranzo testified most likely represents a permanent partial disability (or functional impairment) rating and not the extent to which Plaintiff's carpal tunnel syndrome contributed to his overall disability. As in *Counts*, a permanent partial disability rating is not evidence of the extent to which Plaintiff's carpal tunnel syndrome contributed to his inability to earn wages. At best, Dr. DeFranzo's testimony is equivocal as to whether he was expressing an opinion on a permanent partial impairment rating or attempting to apportion the percentage to which Plaintiff's occupational disease contributed to his disability. When evidence is capable of more than one interpretation, the Commission is not required to accept an interpretation urged by one party over other obvious interpretations. It is also notable that Dr. DeFranzo was never asked what percentage of Plaintiff's inability to earn wages was attributable solely to his carpal tunnel syndrome. As in *Errante* and *Counts*, we thus conclude here that the evidence was insufficient to require the Commission to apportion the award.

In *Pitman v. Feldspar Corp.*, 87 N.C. App. 208, 360 S.E.2d 696 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988), this

Court remanded the case to the Industrial Commission for further findings regarding whether any portion of the plaintiff's total incapacity to work was caused by conditions unrelated to employment. The plaintiff was diagnosed with silicosis after 23 years of exposure to silica dust and stopped working as a result. The Commission awarded the plaintiff total disability benefits. Advisory Medical Committee reports suggested that the plaintiff was completely incapacitated for work by reason of silicosis. However, the testimony and report of a physician tended to show that the plaintiff had, in addition to silicosis, a chronic obstructive lung disease which was due to smoking and possibly to asthma. The physician also stated that 50 percent of the plaintiff's total respiratory impairment was unrelated to the silicosis. The Commission found that the plaintiff was "totally disabled because of his pulmonary condition. The occupational disease silicosis makes a very significant contribution to plaintiff's total disability." *Id.* at 211, 360 S.E.2d at 697. However, because the Commission failed to make specific findings regarding the portion of the plaintiff's total incapacity to work that was caused by his non-work-related health conditions, this Court remanded the case for specific findings.

In this case, however, it is not proper to remand to the Full Commission for further findings of fact because, unlike in *Pitman* where the Commission "failed to resolve crucial issues of fact" regarding apportionment, *id.* at 215, 360 S.E.2d at 699, here, the Commission specifically found that "[b]ased upon the credible medical and vocational evidence of record, the Full Commission finds that as a result of his bilateral carpal tunnel syndrome, Plaintiff has been unable to earn any wages in any employment since March 4, 2004." Insufficient evidence was presented showing what, if any, percentage of Plaintiff's disability was caused solely by his carpal tunnel syndrome. Moreover, the evidence does not establish that Plaintiff would have been disabled as the result of his pre-existing health conditions in the absence of the work-related carpal tunnel syndrome. Even after Plaintiff was diagnosed with congestive heart failure and gout, and suffered two mini strokes, he continued to work with no change in his performance or duties. It was only after he "lost all the uses of [his] hands and wrists" as a result of his carpal tunnel syndrome that he was forced to stop doing his job.

Accordingly, as there was competent evidence to support the Commission's finding that Plaintiff was disabled as a result of his bilateral carpal tunnel syndrome, and insufficient evidence was

presented from which the Commission could apportion the award, the Commission correctly awarded Plaintiff full compensation for his total disability.

### D. Maximum Medical Improvement

**[4]** By its final assignment of error, Defendant contends the Full Commission erred in concluding that Plaintiff had not reached maximum medical improvement from his carpal tunnel syndrome. We disagree.

The term "maximum medical improvement" is not defined by statute. N.C. Gen. Stat. § 97-31 provides compensation for temporary disability during the "healing period." The healing period ends when, "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976). The point at which the injury has stabilized is often called "maximum medical improvement." *Carpenter v. Indus. Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985).

Here, Dr. DeFranzo testified that he first saw Plaintiff in February of 2004, and that nerve conduction studies were done on Plaintiff's hands. The results of those studies were so significant for carpal tunnel syndrome that Dr. DeFranzo did not feel Plaintiff should continue to work until after surgery. Plaintiff was written out of work on 4 March 2004 and never released back to work. Plaintiff underwent surgery on his left hand on 19 April 2004, but surgery was never done on Plaintiff's right hand. Dr. DeFranzo testified that he would want to see Plaintiff again to determine if Plaintiff may need surgery on his right hand, or whether Plaintiff "may continue to have problems with his hands that later will not be correctable by surgery."

Although Plaintiff needed physical therapy after his left carpal tunnel release surgery, he was only able to go to therapy a couple of times before his health insurance ran out. He testified that each visit to the therapist would have cost him "maybe between 50 and 100 dollars" and that continuing his medical insurance under COBRA would have cost him about $300 a month, almost one third of his monthly income.

Plaintiff was last examined by Dr. DeFranzo on 29 September 2004. Dr. DeFranzo testified that if Plaintiff had not received any treatment since that date, he would need further medical treatment for his hands. Dr. DeFranzo also testified that it would be necessary

to see Plaintiff again in order to give an accurate opinion on Plaintiff's "proper disability rating[.]"

Defendant argues that, like the plaintiff in *Aderholt v. A.M. Castle Co.*, 137 N.C. App. 718, 529 S.E.2d 474 (2000), who voluntarily chose not to undergo further surgery, and thus was found to have reached maximum medical improvement, Plaintiff's "decision to discontinue treatment" in this case necessarily leads to the conclusion that he has reached maximum medical improvement. However, as Defendant points out, Plaintiff discontinued his treatment for financial reasons. More specifically, Plaintiff's health insurance expired after he left work due to his medical conditions. Thus, unlike the plaintiff in *Aderholt*, Plaintiff's inability to seek medical treatment here was hardly a voluntary "decision to discontinue treatment." Furthermore, unlike the plaintiff in *Aderholt*, evidence in this case indicates that Plaintiff will resume the treatment required to stabilize his carpal tunnel syndrome when he is financially able to do so.

Accordingly, as the evidence tends to show that Plaintiff's medical treatment for his carpal tunnel syndrome may not be complete, that Plaintiff requires further medical evaluation at a minimum, and that Plaintiff's condition has not stabilized, the Commission correctly determined that Plaintiff has not reached maximum medical improvement. Defendant's assignment of error is overruled.

For the reasons stated above, the decision of the Full Commission is

AFFIRMED.

Judge CALABRIA concurs.

Judge ARROWOOD concurs in part and dissents in part per separate opinion.

ARROWOOD, Judge concurring in part and dissenting in part.

I concur in the holdings announced in Sections A, B, and D of the Court's majority opinion. I respectfully dissent from Section C of the Court's opinion affirming the Commission's failure to apportion Claimant's disability.

The Commission found and concluded that Claimant's employment neither caused nor significantly contributed to his gout or

arthritis. These findings and conclusions when coupled with Dr. DeFranzo's testimony cited by the majority at pages 15 through 17 of the Opinion are, in my opinion, sufficient to require the Commission to make additional findings regarding what portion of Claimant's disability is related to his employment.

I would, therefore, remand this case for further findings regarding what percentage of Claimant's disability is attributable to his job with the City. I believe such additional findings are mandated by *Weaver v. Swedish Imports Maintenance, Inc.*, 319 N.C. 243, 354 S.E.2d 477 (1987) and *Pitman v. Feldspar Corp.*, 87 N.C. App. 208, 360 S.E.2d 696 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.29 924 (1988).