JONATHAN ROSET-EREDIA, A/K/A LIBORIO VALDAVINOS-BARRIGA, EMPLOYEE-PLAINTIFF v. F.W. DELLINGER, INC., EMPLOYER-DEFENDANT, AND NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, CARRIER- DEFENDANT

No. COA07-644

(Filed 20 May 2008)

### 1. Workers' Compensation— disability—limited English skills—illegal alien—ability to find suitable employment

The Industrial Commission did not err by concluding that plaintiff is temporarily totally disabled within the meaning of N.C.G.S. § 97-2(9) where the issue was plaintiff's ability to get a suitable job because his English skills were limited and he is an illegal alien. The Commission found that testimony from plaintiff's vocational expert was credible, and the evidence supported what was essentially a finding of futility. The burden then shifted to defendants, which they did not meet as the Commission rejected as not credible defendants' evidence that suitable jobs were available that plaintiff was capable of obtaining.

### 2. Workers' Compensation— contact with treating physician—identity of employee not material

The Industrial Commission did not err in a workers' compensation claim by concluding that a *Salaam* violation had occurred in that plaintiff's treating physician was contacted by a rehabilitation employee. The Commission's erroneous finding regarding the identity of the particular employee was not material.

### 3. Workers' Compensation— updated FCE—adoption of recommendation of vocational expert and doctor

The Industrial Commission did not err by failing to address the issue of whether an updated Functional Capacity Evaluation was warranted, as defendants contended. The Commission addressed the necessity of an FCE by its adoption of the recom-

**ROSET-EREDIA v. F.W. DELLINGER, INC.**

[190 N.C. App. 520 (2008)]

mendation of plaintiff's vocational expert, as corroborated by plaintiff's treating physician, that plaintiff instead consult a medical specialist.

**4. Workers' Compensation— attorney fees for appeal—not properly raised—not granted**

The Court of Appeals did not order attorney fees for plaintiff in the appeal from a workers' compensation case where the matter was not properly raised as a cross-assignment of error and, even had it been, the Court would have declined to issue the order.

Appeal by defendants from an Opinion and Award entered 2 February 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 November 2007.

*The Law Offices of Robert J. Willis, by Robert J. Willis, for plaintiff-appellee.*

*Brooks, Stevens & Pope, P.A., by Robert S. Welch and James A. Barnes IV, for defendants-appellants.*

*Carol L. Brooke, for North Carolina Justice Center, Amicus Curiae.*

STEELMAN, Judge.

When plaintiff presented sufficient evidence of total disability and defendant-employer failed to rebut plaintiff's evidence, the Industrial Commission did not err in concluding that plaintiff is temporarily totally disabled.

## I. Factual Background and Procedural History

Jonathan Roset-Eredia, a/k/a Liborio Valdavinos-Barriga (plaintiff), was 35 years of age at the time of the hearing before the deputy commissioner, and was an undocumented worker from Mexico. He can read and write in Spanish, but is functionally illiterate in English. On 27 July 2001, plaintiff broke his right leg and ankle in the course and scope of his duties as an employee of F.W. Dellinger, Inc. ("defendant"). Defendant and its insurance carrier North Carolina Insurance Guaranty Association (hereinafter collectively referred to as "defendants") accepted plaintiff's claim as compensable, began providing temporary total disability benefits on 2 August 2001, and filed a Form 60 in February 2002. Plaintiff has had nine orthopedic and plastic surgeries on his leg. In August 2004, plaintiff's treating

ROSET-EREDIA v. F.W. DELLINGER, INC.

[190 N.C. App. 520 (2008)]

physician, Dr. Hage, found plaintiff to be at maximum medical improvement, found a 35% permanent partial disability to the right leg, released him to work with permanent light-duty restrictions, and referred him to vocational rehabilitation. Plaintiff's physical restrictions included no climbing, no squatting, no standing for more than one hour at a time, and no lifting over 35 pounds.

On 15 July 2003 plaintiff's vocational rehabilitation began. Due to plaintiff's status as an undocumented alien, he was unable to complete an I-9 form to document his legal work status. Angela Prenoveau ("Prenoveau"), a certified rehabilitation counselor at Southern Rehabilitation Network ("SRN") performed two labor market surveys, dated 14 January 2004 and 5 October 2004, to determine what jobs were available in plaintiff's geographic area that plaintiff could do based on his work and education history, transferable skills, and physical restrictions. Prenoveau did not communicate with any of the potential employers listed in her labor market surveys to determine what the jobs required in terms of physical activities, reading, mathematical, and writing skills due to her understanding of the SRN policy regarding federal immigration law limitations on job placement activity for injured workers who declined to complete an I-9 Employment Eligibility Verification form. Prenoveau understood the limitations to prohibit her from such communication with potential employers. However, Prenoveau testified that her former employer, the North Carolina State Division of Vocational Rehabilitation, did not construe federal immigration law to prohibit that type of job placement activity by rehabilitation counselors employed by the State. Likewise, Jane Coburn ("Coburn"), Prenoveau's co-worker, testified that she did not understand SRN policy to prohibit her communication with potential employers listed in a job market survey to determine what the jobs required in terms of physical activities.

The Full Commission filed an Opinion and Award on 2 February 2007, which held that as a result of his work-related injuries, plaintiff was totally disabled from earning wages and ordered the payment of temporary total disability at the rate of $407.95 per week pending further orders of the Commission. The Opinion and Award further directed defendants to pay for plaintiff's ongoing medical treatment and vocational rehabilitation services. Prenoveau and SRN were ordered replaced as the vocational rehabilitation professionals with Stephen Carpenter. Defendants appeal. Plaintiff makes several cross-assignments of error.

## II. Commission's Conclusion of Law

**[1]** In their first argument, defendants contend that the Commission erred in concluding that plaintiff is totally disabled within the meaning of N.C. Gen. Stat. § 97-2(9). Defendants argue that the evidence does not support such a finding, and that the Commission's conclusion of law was in error. We disagree.

The standard of review of an Industrial Commission's Opinion and Award is

> whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law. The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, even though there [is] evidence that would support findings to the contrary.

*McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004) (internal citations and quotations omitted). "If the finding of fact is essentially a conclusion of law . . . it will be treated as a conclusion of law which is reviewable on appeal." *Bowles Distributing Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 344, 317 S.E.2d 684, 686 (1984) (citations omitted). The Commission's conclusions of law are reviewed *de novo. McRae* at 496, 597 S.E.2d at 700 (citation omitted).

N.C. Gen. Stat. § 97-2 of the Worker's Compensation Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2007). The employee bears the burden of proving "both the existence of his disability and its degree." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citation omitted). In order to meet this burden, the employee must show at least one of the following:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment;

(2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment;

(3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions,

i.e., age, inexperience, lack of education, to seek other employment; or

(4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

Once the employee presents substantial evidence that he or she is incapable of earning wages, "the employer has the burden of producing evidence to rebut the claimant's evidence." *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). "This requires the employer to come forward with evidence to show not only that suitable jobs are available, *but also that the plaintiff is capable of getting one*, taking into account both physical and vocational limitations." *Id.* (citations omitted).

An employee is "capable of getting" a job if "there exists a reasonable likelihood . . . that he would be hired if he diligently sought the job." It is not necessary . . . that the employer show that some employer has specifically offered plaintiff a job. If the employer produces evidence that there are suitable jobs available which the claimant is capable of getting, the claimant has the burden of producing evidence that either contests the availability of other jobs or his suitability for those jobs, or establishes that he has unsuccessfully sought the employment opportunities located by his employer.

*Burwell* at 73-74, 441 S.E.2d at 149 (internal citations omitted). Whether the evidence of suitable jobs is sufficient to satisfy the employer's burden is a question of fact for the Commission. *Id.*

Where the injured employee is an illegal alien, the employer must "produce sufficient evidence that there are suitable jobs plaintiff is capable of getting, 'but for' his illegal alien status." *Gayton v. Gage Carolina Metals, Inc.*, 149 N.C. App. 346, 351, 560 S.E.2d 870, 874 (2002). Although federal law prohibits employers from hiring, recruiting or referring for a fee unauthorized aliens, 8 U.S.C. § 1324a(a) (1) (A) (1994), this Court has held that employers may "perform labor market surveys to determine what jobs, if any, are available in the area where plaintiff resides that fit [the injured worker's] physical limitations." *Gayton* at 350, 560 S.E.2d at 873. We are bound by the

holdings of this Court in *Gayton. See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

Defendants argue that plaintiff did not present sufficient evidence to satisfy his burden of proof under *Russell, supra.* Specifically, defendants contend that plaintiff did not present adequate evidence that seeking employment is futile because of preexisting conditions, such as his lack of education and English language deficiencies. The parties do not dispute, and the record establishes, that plaintiff is capable of doing some work, that he does not have a job, and that he has not made reasonable efforts to obtain employment. Therefore, the only question is whether plaintiff presented sufficient credible evidence that seeking employment was futile because of preexisting conditions.

The Commission found that:

53. Plaintiff's vocational expert, Stephen Carpenter, was of the opinion that plaintiff has no transferable skills from his past work history, that he can no longer perform his former job as a sheet rock finisher, that his work-related injuries and other vocational skills limit him from a full range of light work with a functional capacity of sedentary, and that it is unlikely that plaintiff can find suitable sedentary work, even at the unskilled level, as he has significant English language deficiencies. As a result of these marked physical and vocational limitations, it is Mr. Carpenter's opinion, and the Full Commission finds as fact, that plaintiff has not and will not be able to enter the competitive labor market until he becomes proficient in the English language and retrains pursuant to the recommendations of Mr. Carpenter.

There is evidence in the record that supports this finding. Carpenter testified in his deposition that plaintiff had no transferable skills. Carpenter's Vocational Report, dated 8 November 2004, states that plaintiff would probably not be able to find sedentary work due to his "significant English language deficiencies," as well as "marked physical and vocational limitations." Carpenter's report concluded that plaintiff would "not be able to enter the competitive labor market until he becomes proficient in the English language and retrains."

Defendants assert that Carpenter's testimony is incompetent because he did not "provide his opinions to a reasonable degree of professional certainty." Although "expert opinion testimony [which] is

based merely upon speculation and conjecture, . . . [] is not suffi-
ciently reliable to qualify as competent evidence," *Holley v. ACTS,
Inc.*, 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003), the degree of an
expert's certainty goes to the *weight* of his testimony, not its admis-
sibility. *Adams v. Metals USA*, 168 N.C. App. 469, 483, 608 S.E.2d 357,
365 (2005). The Commission found Carpenter's testimony to be cred-
ible, and afforded it weight accordingly. In accordance with the appli-
cable standard of review, we decline to reweigh the evidence. *See
Matthews v. City of Raleigh*, 160 N.C. App. 597, 599-600, 586 S.E.2d
829, 833 (2003).

The Commission further found:

56. Based upon the evidence of record concerning plaintiff's
medical, vocational and literacy limitations, the Full Commis-
sion finds that plaintiff has met his burden of proof to show
that the compensable injury that he suffered to his right foot
and ankle on July 27, 2001 caused him and continues to cause
him to be unable to earn the wages that he had been able earn
[sic] before July 27, 2001 in the same or any other employ-
ment from July 27, 2001 through the present and continuing.

We first note that "[a]lthough designated as a finding of fact, the
character of this statement is essentially a conclusion of law and will
be treated as such on appeal." *Britt v. Britt*, 49 N.C. App. 463, 470,
271 S.E.2d 921, 926 (1980) (citation omitted). We therefore review
this finding *de novo* to determine whether it is supported by the
Commission's findings.

Although the Commission did not specifically state that it was
futile for plaintiff to seek other employment, it found that plaintiff
could not enter the labor market due to his limitations, and we hold
that finding of fact 53 is essentially a finding of futility. We further
hold that finding of fact 56 is supported by finding of fact 53, that
plaintiff was unable to earn the wages he was earning before his
injury, and that this constituted a disability within the meaning of
N.C. Gen. Stat. § 97-2(9).

Defendants argue that evidence was presented that plaintiff was
capable of some work and that there was no medical evidence sup-
porting the futility prong, and contend that this evidence negates a
finding by the Commission that it would be futile for the plaintiff to
seek work. Defendants cite Carpenter's testimony that some of the
jobs in the labor market surveys performed by Prenoveau could
potentially be modified by the employer to accommodate a para-

ROSET-EREDIA v. F.W. DELLINGER, INC.

[190 N.C. App. 520 (2008)]

plegic worker, and that if a job description accommodated plaintiff's restrictions, plaintiff could perform the job.

As noted in *Johnson v. City of Winston-Salem*, 188 N.C. App. 383, 656 S.E.2d 608 (2008), the North Carolina Supreme Court has held that the relevant inquiry regarding a claimant's capacity to work "is not whether all or some persons with plaintiff's degree of injury are capable of working and earning wages, but whether plaintiff herself has such capacity." *Johnson* at 391, 656 S.E.2d at 613 (quoting *Little v. Food Serv.*, 295 N.C. 527, 531, 246 S.E.2d 743, 746 (1978)). In *Little*, the Court stated that a physician's testimony that "there are some gainful occupations that someone with [plaintiff's] degree of neurological problem could pursue," was "an oblique generality which sheds no light on plaintiff's capacity to earn wages." *Little.* at 531, 246 S.E.2d at 746. Carpenter's testimony that it is hypothetically possible that plaintiff could perform some sedentary work if the jobs were modified is a generality which sheds no light on plaintiff's capacity to earn wages. *See id.*; *Johnson* at 391, 656 S.E.2d at 613. Further, we note that Carpenter stated several times that "[r]ealistically, these jobs are far beyond [plaintiff's] abilities and his functional capacity[.]"

Once plaintiff presented substantial evidence that he was unable to earn wages, the burden shifted to defendants to show that suitable jobs were available to plaintiff and that he was capable of getting one of those jobs. *See Burwell* at 73, 441 S.E.2d at 149.

The Commission made the following pertinent findings of fact relating to defendants' evidence:

50. In her completion of the October 2004 Labor Market Surveys, Ms. Prenoveau did not communicate in any way with any of the potential employers listed in the October 2004 Labor Market Survey to determine what the particular job(s) actually required in terms of physical activities, reading, mathematical, and writing skills . . .

51. Despite her use of the Labor Market Survey procedures described, Ms. Prenoveau gave the opinion that plaintiff "*might* reasonably have expected" to find one of the jobs listed in her Labor Market Surveys if he made reasonable efforts to search for the job, that those jobs "*may* be appropriate for him", that he "*could* have a reasonable chance of obtaining one of those jobs or some of those jobs if you

made a reasonable effort to search for them", that "there was a reasonable *chance* that he would obtain employment within his restrictions in the area had he signed up with one of those [temporary] agencies", and that "contacting any of those [temporary] agencies *could* lead to employment for him". (emphasis in original)

The Commission found that Prenoveau's opinions

were either speculative ("could", "might", reasonable "chance") or based in substantial part on labor market surveys which failed to include any specific information as to the actual physical, language and educational requirements of those jobs due to Ms. Prenoveau's failure to directly consult with any of the employers listed in those surveys about those physical, language and educational requirements[.]

In the instant case, the Commission stated that it "gives little weight to these vocational opinions." As the Commission is the sole judge of the credibility of the witnesses and has rejected as not credible defendants' evidence that suitable jobs were available which plaintiff was capable of obtaining, we hold that defendants did not meet their burden of producing evidence to show that suitable jobs were available and that plaintiff was capable of getting one, taking into account plaintiff's physical and vocational limitations. *See Burwell* at 73, 441 S.E.2d at 149.

The facts of the instant case are distinguishable from those in an unpublished decision by this Court, *Nicandro Sosa-Parada v. Custom Maintenance, Inc., et. al.*, No. COA06-89 (2006), cited by defendants. In *Sosa-Parada*, we held that the employer had met his burden of proof by completing a labor market survey which identified numerous jobs within the plaintiff's geographical area and physical restrictions which the plaintiff was capable of securing. A treating physician reviewed the labor market survey and approved four of the job descriptions as appropriate for plaintiff.

In the instant case, Prenoveau did not communicate with any of the employers listed in the labor market surveys to determine what the particular jobs required. Therefore, Prenoveau was unable to demonstrate that the jobs contained in those surveys were suitable for plaintiff or that he was capable of securing one of the jobs listed.

Because the Commission's findings of fact are supported by the evidence, and its conclusions of law are supported by the find-

ings, we affirm the award of the Commission. This argument is without merit.

### III. *Salaam* Violation

**[2]** In their next argument, defendants contend that the Commission erred in concluding that a *Salaam* violation occurred. We disagree.

Pursuant to Rule VII.D of the North Carolina Industrial Commission Rules for Rehabilitation Professionals, promulgated pursuant to N.C. Gen. Stat. § 97-25.5 and clarified by the decision in *Salaam v. N.C. DOT*, 122 N.C. App. 83, 468 S.E.2d 536 (1996), rehabilitation professionals are prohibited from communicating with a treating physician without the prior consent of the injured worker's attorney.

In the instant case, the Full Commission found that Prenoveau "contacted Dr. Hage directly without the consent of plaintiff in an effort to convince Dr. Hage to order a functional capacity evaluation." The Commission concluded that:

> 5. The actions of Angela Prenoveau in contacting Dr. Hage were in violation of the principles set out in *Crist v. Moffatt*, 326 N.C. 326, 389 S.E.2d 41 (1990), and *Salaam v. N.C. Dept. of Transp.*, 122 N.C. App. 83, 468 S.E.2d 536 (1996), *disc. review improvidently allowed*, 345 N.C. 494, 480 S.E.2d 51 (1997). See *Mayfield v. Parker Hannifen*, 174 N.C. App. 386, 621 S.E.2d 243 (2005).

The Commission's award provided that:

> 10. Based upon the *Salaam* violation . . . the Full Commission exercises its discretion to require defendant-carrier to replace both Angela Prenoveau and Southern Rehabilitation Network, Inc. ("SRN") as the vocational rehabilitation professionals assigned to this case with Stephen Carpenter . . .

The progress report from SRN cited by plaintiff as showing a violation of *Salaam* establishes that it was Beth Ezzell, not Prenoveau, who attempted to contact or contacted Dr. Hage's staff in April 2005.

Although the evidence in the record does not support the Commission's finding of fact in this matter, and the Commission's conclusion of law is likewise unsupported, "[t]o warrant reversal, the Industrial Commission's error must be material and prejudicial." *Taylor v. Pardee Hospital*, 83 N.C. App. 385, 387, 350 S.E.2d 148, 150 (1986) (citation omitted).

Our review of the transcripts, records, and briefs supports the Commission's finding that a *Salaam* violation occurred. A report by Beth Ezzell states that she repeatedly communicated with the receptionists and assistant of Dr. Hage to inquire whether Dr. Hage "feels the Functional Capacity Evaluation is necessary to determine the IW's limitations and abilities" pursuant to a request from the adjuster.

Defendants have made no argument as to how the Commission's finding regarding the identity of the particular SRN employee is material in light of the Commission's conclusion that a *Salaam* violation occurred, and its decision to replace SRN with Stephen Carpenter. This argument is without merit.

### IV. Functional Capacity Evaluation

[3] In their next argument, defendants contend that the Commission erred in failing to address the issue of whether an updated Functional Capacity Evaluation ("FCE") was warranted. We disagree.

In paragraph 4 of its award, the Commission stated that

4. Defendants shall authorize and pay for the additional vocational and medical assistance, evaluation(s), and/or treatment that are described in Paragraphs 1-6 of Mr. Carpenter's report dated November 8, 2004 in order to effect a cure, provide relief, and/or lessen the period of plaintiff's disability.

The first paragraph of the proposed recommendations in Carpenter's report was that plaintiff obtain a

[c]onsultation with the attending medical specialist to determine the status of the osteomyelitis and other impairments affecting medical stability. Consultation with the physician should include outline of a treatment plan to cure the chronic osteomyelitis and to improve functional capacity so that the client can eventually engage in a full range of competitive work activity.

This recommendation addresses the issue of the necessity of a new FCE and makes clear that, in Carpenter's opinion, an FCE was unwarranted and that plaintiff should instead consult with a medical specialist regarding his physical abilities. Further, during the deposition of Dr. Hage, he was asked about the usefulness of an FCE in determining plaintiff's restrictions. Dr. Hage responded that:

I felt comfortable, given the restrictions that I gave, based on my exam of the patient and my interpretation of the x-rays, and my

talking to Mr. Roset-Eredia about his limitations, and what he can or can't do. And I didn't feel like, at that point, a functional capacity exam was necessary . . .

We hold that, by its adoption of Carpenter's recommendation, which is corroborated by Dr. Hage's opinion, the Commission addressed the issue of the necessity of an FCE. This argument is without merit.

### V. Plaintiff's Cross-Appeal

[4] Plaintiff presents four cross-assignments of error. Plaintiff acknowledges, and we agree, that these arguments are moot due to our affirming the award of the Full Commission. The only argument in plaintiff/cross-appellant's brief not rendered moot is plaintiff's request for attorney's fees for this appeal.

We note that a request to this Court for an award of fees pursuant to N.C. Gen. Stat. § 97-88 was not properly raised as a cross-assignment of error. N.C.R. App. P. 10(d) (2008).

N.C. Gen. Stat. § 97-88 provides that:

If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits . . . to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as a part of the bill of costs.

N.C. Gen. Stat. § 97-88 (2007). Even assuming plaintiff had properly moved for expenses and fees under N.C. Gen. Stat. § 97-88, in our discretion, we decline to issue such an order.

AFFIRMED.

Judges McCULLOUGH and GEER concur.