IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-30

No. COA21-316

Filed 18 January 2022

I.C. No. 16-762129

WENDY MONROE, Employee, Plaintiff,

v.

MV TRANSPORTATION, Employer, SELF-INSURED (BROADSPIRE, Third-Party
Administrator) Defendant.

Appeal by plaintiff from opinion and award entered 3 March 2021 by the North
Carolina Industrial Commission. Heard in the Court of Appeals 15 December 2021.

*The Sumwalt Group, by Vernon Sumwalt and Christa Sumwalt, for plaintiff-
appellant.*

*Wilson Ratledge, PLLC, by Kristine L. Prati, for defendant-appellee.*

ARROWOOD, Judge.

¶ 1        Wendy Monroe ("plaintiff") appeals from the North Carolina Industrial
Commission's (the "Commission") opinion and award concluding plaintiff had not
satisfied her burden of proof to establish that she was entitled to disability benefits.
For the following reasons, we vacate the Commission's opinion and remand for
additional findings.

I.        Background

¶ 2        Plaintiff began working for MV Transportation ("defendant-employer") in April 2016 as a part-time dispatcher and bus driver, where she earned $10.50 per hour. At the time, plaintiff was in her late forties, had a bachelor's degree, and had been receiving Social Security disability benefits since 1994 for an unrelated medical condition.[1]

¶ 3        Around 5:00 a.m. on 4 November 2016, plaintiff was performing a routine bus inspection. While checking the emergency windows, plaintiff "placed her left knee and part of her body weight on [a] bus seat and leaned towards the windows." Because the floor of the bus was wet and slippery, when plaintiff "stepped back with her right foot to reenter the bus aisle, she lost her footing, hit her left shin, and twisted her back and right knee." Plaintiff was able to catch herself, but "ended up leaning slightly backwards in an awkward position, with her left knee still on the seat."

¶ 4        Initially, plaintiff did not report the incident as she thought she had merely lightly injured her shin. However, "[w]ithin an hour" of the incident, plaintiff noticed "back pain, left shin pain, and pain in both her knees[,]" all of which interfered with her work. Thereafter, plaintiff reported the injury to her supervisor, who instructed plaintiff to seek treatment at "Med First Immediate Care and Family Practice."

---

[1] Plaintiff had been diagnosed with having PTSD.

¶ 5        Plaintiff made multiple visits to Med First Immediate Care and Family Practice. Plaintiff complained of pain in her lower back and knees; x-rays were performed on her lumbar spine, which "showed spondylosis," and on her knees, which "were both negative." On 7 November 2016, plaintiff "attempted to work, but had so much pain and difficulty that she returned to Med First" and was referred to the emergency room. Plaintiff received various restrictions for her work, including, among others, alternating between sitting and standing, and avoiding lifting over 20 pounds. On a few occasions, plaintiff tried returning to work; however, she continued to experience pain and was ultimately relieved by her supervisor on 15 November 2016. After that, plaintiff never returned to work.

¶ 6        For the three years that followed, plaintiff attended many medical appointments, throughout which she was given multiple referrals, as well as physical therapy and injection therapy to manage her persistent pain. Particularly, an MRI of her right knee performed 15 February 2018 revealed "complete cartilage loss in the medial compartment and a root tear avulsion of the posterior horn of the medial meniscus." On 14 January 2019, plaintiff "presented with severe progressive right knee pain[,]" which she found at times intolerable, and "walked with a limp"; at this point, a doctor deemed plaintiff "an appropriate candidate for a right total knee arthroplasty."

¶ 7    After seeking opinions regarding partial knee replacement surgery versus a full knee replacement, plaintiff "was scheduled for a partial knee replacement on March 21, 2019, but . . . had to reschedule it because of the availability of a home health care nurse." The surgery was then scheduled for 11 April 2018; however, due to a "miscommunication" and "complication with one of her medications," the surgery was canceled.

¶ 8    Plaintiff's claim, which was originally denied, was ultimately heard before Deputy Commissioner Lori A. Gaines (the "Deputy Commissioner") on 14 June 2019. At that time, "[p]laintiff was waiting to schedule the partial knee replacement surgery."

¶ 9    At the hearing, plaintiff introduced as her exhibits, among other things, medical records pertaining to her injury. Many of these medical records showed that multiple medical providers described plaintiff's "work status" following her injury as: "Unable to work secondary to dysfunction." After the hearing, "the parties took depositions of Dr. Arlene Hallegado, Stephen Free, PA-C, and Dr. Robert Boswell." During their respective depositions, all three medical professionals opined that they would have recommended work restrictions for plaintiff as a result of her injury and ongoing treatment.

¶ 10    In an opinion and award filed 7 February 2020, the Deputy Commissioner concluded that plaintiff had proven her injury was caused by an accident, and,

"[b]ased upon a preponderance of the evidence in view of the entire record, . . . that [p]laintiff ha[d] proven a causal connection between her November 4, 2016 work-related accident and the injuries to her low back and right knee." Then, the Deputy Commissioner found that "[f]rom November 7, 2016 to November 14, 2016 until her release to limited duty with restrictions, [p]laintiff was written entirely out of work." "Therefore," the Deputy Commissioner concluded that plaintiff had "met her burden of proving disability for that period of time."

¶ 11     The Deputy Commissioner continued:

> Plaintiff was given limited duty restrictions on November 11, 2016 but was not written out of work after that date. However, in order to determine Plaintiff's loss of wage-earning capacity, the Commission must take into account the significant restrictions Plaintiff has been provided, her age, her work history, her ongoing back and right knee pain, and her education . . . . Taking these factors into account, the undersigned concludes that because of her compensable injuries, Plaintiff has been unable to earn wages in the same or similar employment, and therefore she *is entitled to total disability compensation* beginning November 15, 2016, and continuing until she returns to work, until further order of the Industrial Commission, or until compensation is otherwise legally terminated.

(Emphasis added.) Then, the Deputy Commissioner concluded that plaintiff was "entitled to medical compensation for such treatment as is reasonably necessary to effect a cure, provide relief, or lessen the period of disability associated with [her] conditions related to the November 4, 2016 injuries."

¶ 12 The Deputy Commissioner awarded plaintiff the following: that defendant-employer "shall pay temporary total disability compensation to plaintiff at the rate of $131.24 per week[2] for the period from November 15, 2016 and continuing until plaintiff returns to work or further order of the Commission, [and] any amounts having accrued shall be paid in lump sum"; that plaintiff was entitled to have defendant-employer "provide all medical treatment, incurred or to be incurred, necessitated by the compensable 4 November 2016 injuries by accident, including but not limited to the proposed surgery for plaintiff's right knee replacement surgery"; and "[a] reasonable attorney's fee in the amount of twenty-five percent . . . ."

¶ 13 Defendant filed notice of appeal on 10 February 2020 to the Full Commission. The appeal was heard on 21 July 2020.

¶ 14 In an Opinion and Award filed 3 March 2021, the Commission found, among other things, that plaintiff was 51 years old at the time of the second hearing, had begun working for defendant-employer in 2016 as a part-time dispatcher and bus driver, where she earned $10.50 per hour, and had been receiving Social Security disability benefits for an unrelated medical condition since 1994.

¶ 15 The Commission found that, on 4 November 2016, plaintiff incurred an injury as described before the Deputy Commissioner, as a result of which plaintiff received

---

[2] This monetary amount was consistent with plaintiff's weekly compensation rate of $131.24, derived from her average weekly wage of $196.86 while employed by defendant-employer.

work restrictions. Plaintiff had returned to work on 15 November 2016, but was relieved by her supervisor due to pain; thereafter, she never worked again. The Commission also found that, between November 2016 and November 2019, plaintiff underwent multiple medical examinations with multiple doctors, which included MRIs, physical therapy, injection therapy, referrals, use of a knee brace, and recommendations for surgery.

¶ 16        The Commission found that, at the time of the hearing, plaintiff had not yet undergone surgery "for various reasons, including a complication with her medications and a miscommunication with scheduling," but intended to do so. The Commission also found plaintiff had not looked for work, or "worked in any capacity," since 15 November 2016. The Commission made no findings pertaining to the medical records included in plaintiff's exhibits regarding plaintiff's work status as being described as "[u]nable to work secondary to dysfunction."

¶ 17        Then, the Commission found, "[b]ased upon the preponderance of the evidence in view of the entire record," that plaintiff's "low back and right knee conditions and current need for treatment [we]re causally related to her incident at work on November 4, 2016." It further found that plaintiff's "treatment for her low back and right knee conditions, and her need for additional treatment, [were] reasonably necessary to effect a cure or provide relief of [her] conditions." The Commission then

found that, although plaintiff "ha[d] some work restrictions related to her low back and right knee conditions[,] . . . she is not restricted from all work."

The Commission concluded plaintiff's 4 November 2016 incident constituted an "accident" under North Carolina law, and that plaintiff had "met her burden of proving a causal relationship between her medical conditions and the accident." Thus, "plaintiff [wa]s entitled to payment of medical treatment for her right knee and low back conditions, including pain management for her low back and orthopedic treatment for her right knee, for so long as such treatment is reasonably necessary to either effect a cure or provide relief."

Next, the Commission addressed the issue of whether plaintiff had met her burden of proving she had a disability as a result of her injuries. The Commission stated: "The burden of proof rests with [p]laintiff to establish disability as a result of her compensable injury." Then, citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982), it continued: "To satisfy this burden, [p]laintiff must show that, due to her compensable injury, she is incapable of earning her pre-injury wages in her pre-injury job or any other form of employment."

The Commission listed the following four factors, as provided by *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (the "*Russell* factors") as what plaintiff may use "to establish disability":

> (1) the production of medical evidence that [plaintiff] is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that [s]he is capable of some work, but that [s]he has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment; (3) the production of evidence that [s]he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that [s]he has obtained other employment at a wage less than that earned prior to the injury.

(Alterations in original.) Then, however, the Commission followed this by stating: "The *Russell* factors are not exhaustive and do not preclude the Commission from considering other means of satisfying the ultimate standard of disability set forth in *Hilliard*."

The Commission found that plaintiff "failed to establish that she conducted a reasonable job search after she was placed on unpaid medical leave by Defendant-Employer," "ha[d] not worked in any other employment since November 15, 2016, and . . . *has not otherwise presented evidence to establish disability*." (Emphasis added.) Accordingly, the Commission concluded that plaintiff "was not entitled to disability compensation."

The Commission awarded plaintiff that defendant-employer "pay for all medical treatment incurred or to be incurred for [p]laintiff's compensable right knee and low back conditions . . . for so long as such treatment is reasonably necessary to

either effect a cure or provide relief." Then, the Commission denied "plaintiff's claim for temporary total disability compensation[,]" as well as plaintiff's request for attorney's fees and defendant-employer's motion to dismiss.

Plaintiff filed written notice of appeal on 29 March 2021.

## II.    Discussion

"Our review of an opinion and award of the Commission is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Griffin v. Absolute Fire Control, Inc.*, 269 N.C. App. 193, 198, 837 S.E.2d 420, 424 (2020) (citation and quotation marks omitted), *discretionary review improvidently allowed,* 376 N.C. 727, 2021-NCSC-9. "The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is evidence to support a contrary finding." *Id.* (citation and quotation marks omitted). "The Commission's conclusions of law are reviewed *de novo.*" *Id.*, 837 S.E.2d at 425 (citation omitted).

Plaintiff argues the Commission's findings of fact are insufficient to support, and for this Court to review, the conclusion that plaintiff did not meet her burden of proving disability. Specifically, plaintiff argues "the entire record contains evidence of the futility of making [plaintiff] look for work[,] considering her restrictions from the injury combined with preexisting factors unrelated to the injury[,] under the third

*Russell* method." Accordingly, plaintiff requests this Court to remand to the Commission for further findings of fact. We agree.

"The term 'disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2021). "Under *Russell*," specifically the third *Russell* factor, "an employee may meet h[er] burden of proving disability by showing 'the employee is capable of some work, but that it would be *futile* because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment.'" *Griffin*, 269 N.C. App. at 202, 837 S.E.2d at 427 (emphasis added) (quoting *Russell*, 108 N.C. App. at 766, 425 S.E.2d at 457).

In *Griffin*, we reviewed the Commission's opinion and award in which it had found as fact that the plaintiff in question was 49 years old, had a ninth-grade education, had worked "primarily in the construction industry building houses or as a pipefitter[,]" had been assigned "permanent restrictions of no lifting more than twenty pounds, alternate sitting and standing, no bending, and to wear a brace while working[,]" and at times had needed to "leave work because of increased pain." *Id.* at 203, 837 S.E.2d at 427-28. Then, in the same award and order, the Commission, "[b]ased upon a preponderance of the evidence in view of the entire record," concluded that the plaintiff had not shown he was disabled, because "[*n*]*o evidence* was presented that [the] [p]laintiff [wa]s capable of some work, but that seeking work

would be futile because of preexisting conditions, such as age, inexperience, or lack of education . . . ." *Id.*, 837 S.E.2d at 427 (emphasis added).

¶ 28        This Court made note of the discord between the Commission's findings of fact and its conclusion, stating: "It is unclear how the Commission concluded that [the] [p]laintiff presented 'no evidence' on futility given its findings reflect factors our appellate courts have found to support a finding of futility." *Id.*, 837 S.E.2d at 428.

¶ 29        In fact, in *Griffin*, this Court listed a myriad of examples of cases in which our appellate courts have previously found evidence tending to prove a plaintiff's disability by way of futility under *Russell*, including: *Thompson v. Carolina Cabinet Co.*, 223 N.C. App. 352, 734 S.E.2d 125 (2012), in which the plaintiff in question "was 45 years old, had only completed high school, [had] work experience . . . limited to heavy labor jobs, and . . . was restricted to lifting no more than 15 pounds"; *Johnson v. City of Winston-Salem*, 188 N.C. App. 383, 656 S.E.2d 608 (2008), in which an "effort to obtain sedentary light-duty employment, consistent with doctor's restrictions, would have been futile given [the] plaintiff's limited education, limited experience, limited training, and poor health"; and *Weatherford v. Am. Nat'l Can Co.*, 168 N.C. App. 377, 607 S.E.2d 348 (2005), in which the plaintiff in question "was 61, had only a GED, had worked all of his life in maintenance positions, was suffering from severe pain in his knee, and was restricted from repetitive bending, stooping,

squatting, or walking for more than a few minutes at a time." *Griffin*, 269 N.C. App. at 202, 837 S.E.2d at 427.

¶ 30 In *Griffin*, this Court concluded that "the Commission's conclusion that there was no evidence to support [the] [p]laintiff's claim of futility reflects a misapplication of the governing precedent and is undermined by its own findings (or lack thereof)." *Id.* at 204, 837 S.E.2d at 428. Accordingly, we reversed and remanded the opinion in part "for additional findings as to whether [the] [p]laintiff made a showing of disability[,] since the only factual findings in the record [we]re consistent with a conclusion of disability under the futility method from *Russell*." *Id.* at 207, 837 S.E.2d at 430.

¶ 31 Plaintiff's case is analogous. Plaintiff introduced the following evidence of "preexisting conditions" before the Commission: that she was in her fifties at the time the hearings began, had been receiving Social Security disability benefits unrelated to the incident in question for several decades, and, in spite of her bachelor's degree, was working a part-time job in transportation earning $10.50 per hour, equivalent to less than minimum wage. *See id.* at 202, 837 S.E.2d at 427 (quoting *Russell*, 108 N.C. App. at 766, 425 S.E.2d at 457).

¶ 32 The record also reflects that, after incurring her injury, from November 2016 through November 2019, plaintiff received work restrictions, including to alternate between sitting and standing, to limit stooping, bending, and twisting, and to avoid

lifting more than 20 pounds. Then, plaintiff underwent innumerable medical evaluations and procedures, including MRIs, referrals, physical therapy, injections, and the use of a brace, culminating in a need for surgery. Furthermore, plaintiff continued to suffer persistent and worsening pain, with her knee frequently giving way.

¶ 33        Despite the Commission considering all of the above as findings of fact, it concluded that plaintiff had "*not otherwise presented evidence to establish disability*." (Emphasis added.) Moreover, the Commission made no findings whatsoever regarding plaintiff's exhibits containing copies of medical records in which plaintiff's "work status" following her injury was labeled as "[u]nable to work secondary to dysfunction."

¶ 34        The Commission's conclusion that plaintiff presented no evidence of disability ignores the evidence plaintiff actually introduced during both hearings. In addition to this mistake, the Commission failed to consider whether plaintiff had, under *Russell*, met her burden of establishing her disability by showing that, though she was capable of some work following her injury, it would be futile to seek other employment at the time due to preexisting conditions, such as age, inexperience, lack of education, or a previous disability. *See Griffin*, 269 N.C. App. at 202, 837 S.E.2d at 427 (quoting *Russell*, 108 N.C. App. at 766, 425 S.E.2d at 457).

"[G]iven its findings reflect factors our appellate courts have found to support a finding of futility[,]" and the fact that the Commission itself cited the futility method under *Russell* as a means by which a plaintiff may show disability, we are unable to reconcile the Commission's findings, "or lack thereof[,]" to its conclusion that plaintiff failed to present *any* evidence showing disability. *See id.* at 203-204, 837 S.E.2d at 428. Accordingly, we must vacate the opinion and award and remand for additional findings as to whether, under *Russell*, the evidence plaintiff presented is sufficient to establish disability by way of futility. *See id.* at 207, 837 S.E.2d at 430.

## III.     Conclusion

We vacate and remand to the Commission to make further findings under the *Russell* tests.

VACATED AND REMANDED.

Judges INMAN and HAMPSON concur.